David S. Gingras, #021097
**Gingras Law Office, PLLC**
4802 E. Ray Road, #23-271
Phoenix, AZ 85044
Tel.: (480) 264-1400
Fax: (480) 248-3196
David@GingrasLaw.com
Attorney for Plaintiffs Kyle Grant,
Mariel Grant and Travis Grant

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Travis Grant and Mariel Grant, Husband and Wife; and Kyle Grant, | Case No. _____ |
| Plaintiffs, | |
| v. | **VERIFIED COMPLAINT** |
| Andrew Ivchenko and Renee Ivchenko, Husband and Wife, | |
| Defendants. | |

For their Verified Complaint, Plaintiffs Travis Grant, Mariel Grant, and Kyle Grant, allege the following:

1.     The court system is a powerful tool for resolving disputes in an organized and hopefully somewhat civilized manner. But like any powerful tool, the court system is subject to abuse.

2.     This case arises from, and seeks compensation for, an *extreme* example of such abuse.

## PARTIES

3.     Plaintiffs Travis Grant ("Travis") and Mariel Grant ("Mariel") are a married couple. At all times relevant to this matter, Travis and Mariel resided in, and were citizens of, the State of Florida.

4. Kyle Grant ("Kyle") is Travis's brother. At all times relevant to this matter, Kyle resided in, and was a citizen of, the State of Florida.

5. Defendants Andrew Ivchenko ("Mr. Ivchenko") and Renee Ivchenko ("Mrs. Ivchenko") are a married couple who reside in Scottsdale, Arizona.

6. As explained further herein, during all times relevant to this matter Mr. and Mrs. Ivchenko were each acting for the benefit of their marital community within the meaning of A.R.S. § 25–215(D).

## JURISDICTION/VENUE

7. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000 and the parties are citizens of different states.

8. The transactions and occurrences involved in this matter took place in Maricopa County and all Defendants reside in Maricopa County; therefore, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1).

## FACTUAL BACKGROUND

## SUMMARY OF TRAVIS'S WEBSITES

9. During the times relevant to this action, and presently, Travis has owned and operated several websites including www.RapsSheetz.com, www.Rapsheets.org, www.BailBondSearch.com, www.BailBonsdsHQ.com and www.PublicPoliceRecord.com. For the purposes of this matter, these sites are collectively referred to as "Travis's websites".

10. In general, Travis's websites are involved in "content aggregation". As used herein, "content aggregation" means that Travis's websites gather, index, and display or "republish" existing online information created by third party sources.

11. In general, the information republished on Travis's websites was first published on other publicly accessible websites operated by third parties.

12. The information aggregated and republished by Travis's websites includes previously published arrest records and mugshots from state and local law enforcement.

13.     In general, the arrest records and mugshots aggregated by Travis's websites were initially created and published on the Internet by various law enforcement agencies across the United States including the Maricopa County Sheriff's Office ("MCSO").

14.     Currently, the database of records displayed on Travis's websites contains tens of millions of entries from 45 different U.S. states; the only states not represented in the index are Alaska, Delaware, Hawaii, Massachusetts and Vermont.

15.     Travis's websites do not publish, and have never republished, mugshots or arrest records created by federal law enforcement agencies such as the FBI or United States Marshall's Service.

16.     After arrest records and mugshots are first published on the Internet by the arresting agency, Travis's websites use automated software to gather or "aggregate" the records which are then republished *verbatim* on one or more of Travis's websites.

17.     Kyle works for Travis.

18.     Kyle does not have, and has never had, any ownership interest in Travis's websites.

19.     Among other things, Kyle's job duties include administrative tasks such as reviewing and researching removal requests submitted by individuals appearing on one or more of Travis's sites.

20.     As a matter of policy and subject to his own final editorial discretion, Travis does not ordinarily remove records upon request.

21.     Although he is not legally obligated to do so, as a matter of policy, Travis regularly considers requests to remove or update content for various reasons.

22.     As a matter of policy, Travis has always been willing to consider requests to update pages appearing on his websites if the requesting party submits information showing the records in question have been sealed, expunged, or dismissed. Travis may also consider updating and/or removing records for any other reason he deems proper.

23.     As a matter of policy, Travis has also routinely agreed to remove records from his website, even when he was under no legal or other obligation to do so.

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

24.   Travis's   websites   earn   money   from   Google's   AdSense   program ("AdSense"). As participants in the AdSense program, Travis's websites display advertisements from the program ("AdSense ads").

25.   The contents of each AdSense ad appearing on Travis's websites are created solely by Google's AdSense customers, not by Plaintiffs.

26.   Every AdSense ad appearing on Travis's websites contains a blue triangle and/or a blue "x" in the upper right-hand corner, similar to the example shown below:

**Example AdSense Ad With Blue "X"**



27.   The blue "X" and/or blue triangle (or both) shown in the example above appear in all Google AdSense ads.

28.   Beyond simply allowing *any* AdSense ads to appear, Plaintiffs cannot and do not control which specific AdSense ads appear on any of Travis's websites.

29.   The decision regarding which (if any) AdSense ads to display on Travis's websites is made solely by Google, not by Plaintiffs.

30.   Plaintiffs have never displayed the name, address, telephone number, mugshot, or any other information contained in a criminal justice record in any advertisement for a product or service appearing on any of Travis's websites.

31.   Since August 27, 2019, Plaintiffs have not used a name, address, telephone number, mugshot, or any other information contained in a criminal justice record to solicit business for pecuniary gain within the meaning of A.R.S. § 44–7902(B).

4

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

### RENEE IVCHENKO'S ARREST

32. According to her husband, Defendant Renee Ivchenko is a severe alcoholic.

33. Due to problems related to her alcoholism, Mrs. Ivchenko has had numerous contacts with law enforcement including the City of Scottsdale Police.

34. On April 21, 2018, Mrs. Ivchenko called Scottsdale Police and told them she had just been assaulted by her husband, Andrew.

35. Mrs. Ivchenko's allegation of assault was completely false.

36. Mrs. Ivchenko falsely accused Mr. Ivchenko of assault because she was angry that Mr. Ivchenko had taken away alcohol from her and poured it down the drain.

37. On or about April 21, 2018, Mr. Ivchenko told Scottsdale Police that Mrs. Ivchenko fabricated the story about being assaulted because she was angry that he had poured a bottle of her vodka down the sink, or words to that effect.

38. Based on Mrs. Ivchenko's allegation of domestic violence, Scottsdale Police went to the Ivchenko residence to investigate.

39. After the police arrived at his residence, Mr. Ivchenko told the police that he did not assault Mrs. Ivchenko.

40. Upon further investigation, which included speaking to both Mr. and Mrs. Ivchenko and inspecting Mrs. Ivchenko for any injuries, the police were unable to find any evidence showing that Mr. Ivchenko assaulted Mrs. Ivchenko.

41. Under A.R.S. § 13–2907.01, it is a crime for any person to knowingly make to a law enforcement agency of either this state or a political subdivision of this state a false, fraudulent or unfounded report or statement or to knowingly misrepresent a fact for the purpose of interfering with the orderly operation of a law enforcement agency or misleading a peace officer.

42. When Mrs. Ivchenko falsely told Scottsdale Police that Mr. Ivchenko assaulted her on April 21, 2018, she committed a crime.

43. Based on his personal involvement in the events, Mr. Ivchenko knew that Mrs. Ivchenko committed a crime on April 21, 2018.

44.     While talking with police officers, Mrs. Ivchenko became combative, argumentative, and refused to follow instructions from the officers.

45.     Attached hereto as <u>Exhibit A</u> is a true and correct redacted copy of Scottsdale Police Report #18–08959 relating to the arrest of Renee Ivchenko on April 21, 2018. In this report, one of the police officers provided the following narrative description of the events which he witnessed at the Ivchenko residence:

We informed Andrew that Renee and he needed to stay separated for the night until she could sober up. While Andrew was packing, I stoodby with Renee in the kitchen. I gave several verbal commands for Renee to remain seated in a separate room. Renee initially ignored my verbal commands to take a seat and insisted on speaking with Andrew, which I did not allow. Renee eventually went to the living room to lay on the couch for a few seconds before getting back up and trying to walk past me to speak with Andrew. I informed Renee several times that she was not going to speak Andrew in person anymore that night due to her intoxication and behavior. Renee insisted on continuing to disobey my commands and became very agitated with FTO Ryan, Ofc. Dearing, and myself. Renee began yelling aggressively, swinging her arms, and pointing at the other officer and me while I told her to calm down. Renee then pushed me in the chest with open palms, causing herself to fall backwards against the living room couch. I then grabbed Renee`s right arm, FTO Ryan grabbed Renee`s left arm, and we placed both of her arms behind her back into handcuff position.

46.     The events described in Scottsdale Police Report #18–08959 were captured on video by bodycams worn by officers present at the scene.

47.     The events described in the police report are substantially consistent with what is shown in the bodycam footage.

48.     Scottsdale Police arrested Renee Ivchenko on April 21, 2018.

49.     At the time of her arrest on April 21, 2018, Scottsdale Police alleged probable cause existed to charge Mrs. Ivchenko with three criminal offenses: 1.) aggravated assault on a police officer, a felony, 2.) disorderly conduct-touched to injure, a misdemeanor, and 3.) disorderly conduct-fighting, a misdemeanor.

50.     After her arrest in Scottsdale on April 21, 2018, Mrs. Ivchenko was transferred to the custody of the Maricopa County Sheriff's Office (MCSO) who, in turn, took Mrs. Ivchenko's booking photo or "mugshot".

51.     Shortly thereafter (within a day or two), MCSO published Mrs. Ivchenko's mugshot and other details regarding her arrest on its website located at https://www.mcso.org/Mugshot/.

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

52.     At the time MCSO published Mrs. Ivchenko's mugshot on the Internet, it did not place any technical or legal restrictions on the republication of that information.

53.     On or around April 21–23, 2018, MCSO published all of the following information about Mrs. Ivchenko on its publicly accessible website:



**T452814   RENEE RACHELLE IVCHENKO**

**Booking Number:** T452814
**Booking Date:** 04/21/2018
**Sex:** FEMALE
**Height:** 5'07
**Weight:** 125
**Eye Color:** HAZEL
**Hair Color:** BLONDE OR STRAWBERRY
**D.O.B:** 2/17/1972

(1) Count of ASSAULT-TOUCHED TO INJURE
(1) Count of DISORDERLY CONDUCT-FIGHTING

54.     Within three days of the time MCSO first published this information on its website, the same information was aggregated and republished verbatim on one or more of Travis's websites.

55.     The mugshot and arrest information relating to Mrs. Ivchenko was republished on Travis's websites without any substantive changes to the information.

56.     From the time of Mrs. Ivchenko's arrest continuously to the present day, Mrs. Ivchenko's mugshot, arrest details, and other information relating to her arrest (including the Scottsdale Police report, bodycam footage, and direct Complaint) are all matters of public record and are accessible to any member of the public upon request.

57.    Under Arizona law, including but not limited to A.R.S. § 39–121, public records in the custody of any public agency or officer are open to public inspection.

58.    On April 24, 2018, Mrs. Ivchenko was charged by direct complaint with one felony count of aggravated assault in Maricopa County Superior Court Case No. CR2018-119949.

59.    On May 11, 2018, Mrs. Ivchenko agreed to participate in a deferred prosecution program to resolve the criminal charge against her.

60.    As part of her participation in the deferred prosecution program, Mrs. Ivchenko made a written representation to the Court avowing that she was, in fact, guilty of the crime she was charged with – felony aggravated assault. A true and correct copy of the Complaint and Mrs. Ivchenko's admission of guilt are attached hereto as <u>Exhibit B</u>.

> As part of my consent to participate in the Felony Pretrial Intervention Program, I acknowledge that I am guilty of the offenses charged in the complaint. I acknowledge that this admission and the statements in this document may be used against me if I fail to successfully complete the program and my case proceeds to trial. I understand that I have the right to remain silent and I make the following statements voluntarily after consultation with my attorney.
>
> On _____**April 21, 2018**_____ in**Scottsdale, Arizona - Maricopa County**
>      Date of Offense                        Location and Jurisdiction
>
> **On April 21, 2018, I, Renee Ivchenko, knowingly touched Brandon Treglown**
>
> **in the chest area with the intent to provoke him.  Brandon Treglown is a**
>
> **a Scottsdale Police Officer and at the time of this incident he was in full**
>
> **uniform and I knew he was a police officer acting in his official capacity.**

61.    By no later than May 15, 2018, Mr. Ivchenko knew Renee had been charged with a crime in CR2018-119949, and he knew she agreed to participate in a deferred prosecution program to resolve the criminal charge against her.

62.    By no later than May 15, 2018, Mr. Ivchenko knew Renee had signed a document containing a statement: "<u>I acknowledge that I am guilty of the offenses charged in the complaint</u>", meaning the direct Complaint filed in CR2018-119949.

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

63.     Upon discovering that Mrs. Ivchenko's mugshot had been republished on one or more of Travis's websites, in October 2018 Mr. and/or Mrs. Ivchenko used an online form to submit a request that Mrs. Ivchenko's mugshot be removed on the grounds that the criminal case against her had been "dismissed".

64.     Upon receiving this request, the page featuring Mrs. Ivchenko's mugshot was updated to prominently include the word "DISMISSED" in all capital letters in a yellow box as shown below.



65.     Other than adding the word "DISMISSED" to the page in October 2018 in response to a request submitted by either Mr. and/or Mrs. Ivchenko, Defendants made no other changes of any kind to the page after that date.

**THE COPYRIGHT APPLICATION**

66.     On or about March 23, 2019, Mr. Ivchenko submitted an application to the United States Copyright Office for an "Untitled" visual work.

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

67.    The "work" that was the subject of this application was either solely, or it included in part or in whole, the mugshot of Mrs. Ivchenko created by MCSO at the time of Mrs. Ivchenko's arrest on April 21, 2018.

68.    In this application, Mr. Ivchenko stated the "work" in question was authored by Renee Rachelle Ivchenko.

69.    Based on Mr. Ivchenko's representation in the application, the Copyright Office registered the "work" and assigned it Registration Number VA0002154452.

70.    Details of the issued copyright registration obtained by Mr. Ivchenko are available at copyright.gov and are shown below:

> **Type of Work:** Visual Material
> **Registration Number / Date:** VA0002154452 / 2019-03-23
> **Application Title:** Untitled.
> **Title:** Untitled.
> **Description:** Electronic file (eService)
> **Copyright Claimant:** Renee Rachelle Ivchenko. Address: 4960 S Gilbert Rd Ste 1-226, CHANDLER, AZ, 85249, United States.
> **Date of Creation:** 2018
> **Date of Publication:** 2018-03-10
> **Nation of First Publication:** United States
> **Authorship on Application:** Renee Rachelle Ivchenko; Domicile: United States; Citizenship: United States. Authorship: photograph.
> **Names:** Ivchenko, Renee Rachelle

71.    17 U.S.C. § 201(a) provides: "Copyright in a work protected under this title vests initially in the author or authors of the work."

72.    As a matter of law, the "author" of a copyrighted work is either the person who originally created the work (e.g., the photographer who took the photo), or the employer or other hiring party who commissioned the creation of the work as a work for hire within the meaning of 17 U.S.C. § 201(b).

73.    As a matter of law, Renee Ivchenko was not the "author" of the work registered as VA0002154452.

74.    At the time Mr. Ivchenko submitted the copyright application relating to Mrs. Ivchenko's mugshot to the United States Copyright Office in March 2019, he knew or reasonably should have known that Mrs. Ivchenko was not the "author" of the work for which registration was sought.

GINGRAS LAW OFFICE PLLC
4802 E. Ray Road, #23-271
PHOENIX, AZ 85044

75. Since receiving the Certificate of Registration for VA0002154452, Mr. Ivchenko and/or Mrs. Ivchenko have sent at least five (5) takedown demands to Twitter and Google purportedly under the provisions of the Digital Millennium Copyright Act; the "DMCA", 17 U.S.C. § 512.

76. Copies of the DMCA takedown demands sent by Mr. Ivchenko are archived by Lumendatabase.org, and a summary of these demands is shown below:

**DMCA Takedown Notice (Tweet)**

Date Received: June 13, 2020    *Andrew Ivchenko PLLC* ⟹ *Twitter*

Reported to Lumen: June 15, 2020

Andrew **Ivchenko** PLLC

COPYRIGHT

**DMCA Takedown Notice (Tweet)**

Date Received: April 03, 2020    *Andrew Ivchenko PLLC* ⟹ *Twitter*

Reported to Lumen: April 28, 2020

Andrew **Ivchenko** PLLC

COPYRIGHT

**Court Order Complaint to Google**

Date Received: December 24, 2018    *ANDREW IVCHENKO* ⟹ *Google LLC*

Reported to Lumen: December 26, 2018

ANDREW **IVCHENKO**

https://www.jailbase.com/[REDACTED]

COURT ORDERS

**DMCA (Copyright) Complaint to Google**

Date Received: October 12, 2019    *RENEE IVCHENKO* ⟹ *Google LLC*

Reported to Lumen: October 12, 2019

RENEE **IVCHENKO**

DMCA NOTICES, COPYRIGHT

**DMCA (Copyright) Complaint to Google**

Date Received: July 20, 2019    *RENEE IVCHENKO* ⟹ *Google LLC*

Reported to Lumen: July 20, 2019

RENEE **IVCHENKO**

https://www.linkedin.com/[REDACTED]

DMCA NOTICES, COPYRIGHT

GINGRAS LAW OFFICE, PLLC
4802 E. Ray Road, #23-271
PHOENIX, AZ 85044

77. Each of the DMCA takedown demands shown above relate to Mrs. Ivchenko's mugshot taken at the time of her arrest on April 21, 2018.

78. Each of the DMCA takedown demands shown above contained an affirmative representation that Mrs. Ivchenko owned the copyright to her mugshot.

79. Each of the DMCA takedown demands shown above was signed by Mr. and/or Mrs. Ivchenko under penalty of perjury.

80. Mrs. Ivchenko does not now, nor has she ever, lawfully owned the copyright or any other exclusive rights to her mugshot.

81. Mrs. Ivchenko's mugshot was created by an employee of the Maricopa County Sheriff's Office acting within the scope of his/her employment.

82. Pursuant to 17 U.S.C. § 201(b), the copyright in Mrs. Ivchenko's mugshot is owned by Maricopa County, Arizona.

83. At no time did Maricopa County execute a signed written agreement transferring copyright ownership of Mrs. Ivchenko's mugshot to her, or to anyone else.

84. At no time did Mrs. Ivchenko have a written work for hire agreement with the MCSO employee who took her mugshot.

85. Mr. and Mrs. Ivchenko have, on multiple occasions, made knowingly false statements to third parties for the purpose of attempting to remove Mrs. Ivchenko's mugshot from the Internet.

86. A person who performed a reasonable investigation into the facts and circumstances surrounding the Certificate of Registration for VA0002154452 obtained by Mr. Ivchenko would know the Certificate of Registration was obtained by fraud; specifically Mr. Ivchenko falsely represented to the U.S. Copyright Office that Mrs. Ivchenko was the "author" of her mugshot when, in fact, he knew she was not.

87. Knowingly making a false statement of material fact to the U.S. Copyright Office is a federal crime in violation of 17 U.S.C. § 506(e).

88. Knowingly making a false sworn statement on a DMCA notice is a federal crime in violation of 18 U.S.C. § 1621.

GINGRAS LAW OFFICE, PLLC
4802 E. Ray Road, #23-271
PHOENIX, AZ 85044

**LITIGATION BEGINS—CASE 1**

89.     On May 9, 2019, Mr. Ivchenko filed a Complaint against Plaintiffs in Maricopa County Superior Court Case No. CV2019-090493 ("Case 1"). A true and correct copy of the Complaint from that matter is attached hereto as Exhibit C.

90.     Among other things, the Complaint in Case 1 alleged that Kyle David Grant, Travis Paul Grant, and Mariel Lizette Grant violated Mrs. Ivchenko's rights by republishing her name, mugshot, and arrest information on the Internet.

91.     Among other things, the Complaint in Case 1 alleged that Defendants (Plaintiffs here) defamed Mrs. Ivchenko by "publish[ing] Plaintiff's image on various Websites" and by implying *falsely* that Mrs. Ivchenko was guilty of a crime.

92.     At the time Mr. Ivchenko filed Case 1, he knew that Mrs. Ivchenko did, in fact, commit one or more criminal acts on April 21, 2018 and/or on other dates.

93.     At the time Mr. Ivchenko filed Case 1, he knew that Mrs. Ivchenko had previously signed a written statement admitting that she was guilty of felony aggravated assault on a police officer.

94.     At the time Mr. Ivchenko filed Case 1, he knew that a statement implying that Mrs. Ivchenko was guilty of criminal conduct was not false.

95.     The Complaint in Case 1 alleged that Mrs. Ivchenko suffered damages in excess of $1 million from the events alleged in the Complaint.

96.     At the time Mr. Ivchenko filed Case 1, he knew that Mrs. Ivchenko had not suffered any damages whatsoever as a result of the events alleged in the Complaint.

97.     Shortly after Travis was served with the Complaint in Case 1 in May 2019, he retained counsel to defend the matter.

98.     On May 28, 2019, Travis's counsel sent an email to Mr. Ivchenko, a copy of which is attached hereto as Exhibit D.

99.     Among other things, the May 28, 2019 email to Mr. Ivchenko explained that Case 1 was groundless because to the extent Travis published any statement alleging or implying that Mrs. Ivchenko was guilty of a crime, that implication was entirely true.

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

100. Among other things, the May 28, 2019 email to Mr. Ivchenko explained that Case 1 was groundless because it was based on the republication of existing online content which Arizona courts have previously determined to be protected by the Communications Decency Act, 47 U.S.C. § 230(c)(1).

101. Although not specifically referenced in the May 28, 2019 email, one or more claims in Case 1 (including, but not limited to, the cause of action for defamation) were untimely as a matter of law pursuant to A.R.S. § 12–541 because they were based on information published more than one year prior to the filing of Case 1.

102. Although not specifically referenced in the May 28, 2019 email, one or more claims in Case 1 (including, but not limited to, the cause of action for defamation) were groundless because they were based on statements published on a "bogus Twitter account" which were not statements made or published by Plaintiffs.

103. On May 31, 2019, after the case was removed to federal court, Mr. Ivchenko dismissed Case 1 without prejudice by filing a Notice of Voluntary Dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i).

104. After Case 1 was dismissed, Plaintiffs removed Mrs. Ivchenko's mugshot and arrest information from all of Travis's websites until at least September 2020.

**LITIGATION CONTINUES—CASE 2**

105. On December 17, 2019, Mr. and Mrs. Ivchenko, now represented by counsel (David Ferrucci, Esq.; "Mr. Ferrucci"), filed a Complaint in Maricopa County Superior Court Case No. CV2019-153355 ("Case 2"). A true and correct copy of the Complaint filed in Case 2 is attached hereto as Exhibit E.

106. Among other things, the Complaint in Case 2 alleged in ¶ 4 that Plaintiffs "extort payment of fees for removal of the arrest information from the victims who [sic] identities and likenesses have been misappropriated." This allegation was made by Defendants without probable cause and with malice. The allegation lacked probable cause because Defendants knew the statement was false and knew that no reasonable basis existed to believe that the statement was true.

14

107.   Among other things, the Complaint in Case 2 alleged that Plaintiffs defamed Mrs. Ivchenko by publishing statements on Travis's websites accusing Mrs. Ivchenko of committing a crime or implying that she had committed a crime. This allegation was made by Defendants without probable cause and with malice. The allegation lacked probable cause because Defendants knew that any statement implying Mrs. Ivchenko committed a crime was true.

108.   Among other things, the Complaint in Case 2 alleged that Plaintiffs defamed Mr. Ivchenko by publishing statements on Twitter falsely accusing him of engaging in a "fraud" on the U.S. Copyright Office. This allegation was made by Defendants without probable cause and with malice. The allegation lacked probable cause because Defendants knew the statement accusing Mr. Ivchenko of engaging in "fraud" was true. The allegation further lacked probable cause because Mr. and Mrs. Ivchenko knew that Plaintiffs did not publish any such statement and knew that no reasonable basis existed to believe that Plaintiffs had published any such statement.

109.   At the time the Complaint in Case 2 was filed, Mr. and Mrs. Ivchenko knew, or should reasonably have known, that any statement published by Plaintiffs accusing Mrs. Ivchenko of committing a crime or implying that she had committed a crime was true.

110.   At the time the Complaint in Case 2 was filed, Mr. and Mrs. Ivchenko knew, or should reasonably have known, that any statement published by Plaintiffs implying that Mr. Ivchenko had committed "fraud" on the U.S. Copyright Office was true.

111.   At the time the Complaint in Case 2 was filed, Mr. and Mrs. Ivchenko knew, or should reasonably have known, that Plaintiffs had not published any false statements about Mr. or Mrs. Ivchenko on Twitter.

112.   At the time the Complaint in Case 2 was filed, Mr. and Mrs. Ivchenko knew that Plaintiffs had not asked for money or anything else of value for the removal of Mrs. Ivchenko's mugshot and/or arrest information from any of Travis's websites.

GINGRAS LAW OFFICE, PLLC
4802 E. Ray Road, #23-271
PHOENIX, AZ 85044

GINGRAS LAW OFFICE, PLLC
4802 E. Ray Road, #23-271
PHOENIX, AZ 85044

113.   At the time the Complaint in Case 2 was filed, Mr. and Mrs. Ivchenko knew, or should reasonably have known, that Mrs. Ivchenko's mugshot had previously been removed from all of Travis's websites without any request for, or payment of, money or anything else of value.

114.   Each and every claim asserted in the Complaint in Case 2 lacked probable cause, either factually, legally, or both.

115.   Each and every claim asserted in the Complaint in Case 2 was asserted solely for malicious purposes and not for the purpose of resolving any legitimate dispute.

116.   One or more claims in Case 2 (including, but not limited to, the cause of action for defamation) were untimely as a matter of law pursuant to A.R.S. § 12–541 because they were based on statements published more than one year prior to the filing of Case 2.

117.   Prior to the filing of Case 2, Mr. Ivchenko knew the statute of limitations for defamation claims in Arizona was one year pursuant to A.R.S. § 12–541.

118.   Mr. and Mrs. Ivchenko intentionally decided to include false factual allegations in the Complaint in Case 2 to ensure that Plaintiffs could not quickly resolve the matter by moving to dismiss the Complaint pursuant to Rule 12(b)(6).

119.   Specifically, Mr. and Mrs. Ivchenko knew that any claims based on the publication of Mrs. Ivchenko's mugshot would be untimely as a matter of law because that information was published on Travis's websites beginning in April 2018; more than one year before the Complaint in Case 2 was filed on December 17, 2019.

120.   In an effort to make it appear (falsely) that the Complaint in Case 2 stated timely claims for relief, Mr. and Mrs. Ivchenko falsely accused Plaintiffs of posting defamatory statements about Mr. and Mrs. Ivchenko on Twitter within one year prior to the filing of the Complaint in Case 2.

121.   The decision to include claims based on the statements published on Twitter was done solely to make it appear the Complaint's defamation claims were not time-barred even though such claims were, in fact, untimely as a matter of law.

122.   At the time Case 2 was filed, Mr. and Mrs. Ivchenko knew there was no probable cause to support the allegation that Plaintiffs had posted defamatory statements about Mr. and Mrs. Ivchenko on Twitter within the one year period prior to the filing of the Complaint in Case 2. This allegation was made by Defendants without probable cause, with knowledge that it was false, and with malice.

123.   In a series of emails beginning on January 10, 2020, Defendants were informed that one or more of the claims in Case 2 were groundless for numerous reasons.

124.   Attached hereto as <u>Exhibit F</u> is a true and correct copy of an email sent to Mr. Ferrucci on January 10, 2020. This email explained that, among other things, one or more claims in Case 2 were groundless because they were untimely and because they were based on statements which were literally and substantially true (i.e., the alleged statement implying that Mrs. Ivchenko had engaged in criminal conduct).

125.   Mr. Ferrucci read the January 10th email shortly after it was sent and shared it with Mr. and/or Mrs. Ivchenko shortly thereafter.

126.   A reasonable lawyer knows that after the applicable statute of limitations for a claim has expired, that claim cannot be pursued in court.

127.   The statute of limitations in Arizona for injuries done to the character or reputation of another by libel or slander is one year pursuant to A.R.S. § 12–541.

128.   The one year limitation period of A.R.S. § 12–541 begins to run on the date the defamatory information is first published, not when it is discovered. *See Larue v. Brown*, 235 Ariz. 440, 443 (App. 2014) ("Arizona provides that the statute of limitations for a defamation action <u>begins to run upon publication of the defamatory statement</u>.")

129.   Among other things, the Complaint in Case 2 asserted claims for defamation and false light invasion of privacy based on statements published more than one year prior to the commencement of the action.

130.   At the time Case 2 was filed, Mr. and Mrs. Ivchenko knew such claims were asserted without probable cause and with malice.

131.   Despite numerous demands from Plaintiffs to dismiss all claims in Case 2

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

17

which were not supported by probable cause, Mr. and Mrs. Ivchenko initially refused to dismiss any claims from the case and indicated that all claims were tenable and well-grounded in fact.

132.    Based on that refusal, on February 7, 2020, Plaintiffs filed an Answer in Case 2 and on February 21, 2020, they filed a Motion for Summary Judgment.

### LITIGATION CONTINUES—CASE 2(b)

133.    Six days later on February 27, 2020, while the Motion for Summary Judgment remained pending, Mr. and Mrs. Ivchenko filed an Amended Complaint in Case 2, a true and correct copy of which is attached hereto as <u>Exhibit G</u> ("Case 2(b)").

134.    The Amended Complaint in Case 2(b) substantially changed the nature of the proceeding. Among other things, the Amended Complaint in Case 2(b) added a total of 20 new anonymous "John Doe" and "Jane Doe" Plaintiffs each asserting new claims not present in the original Complaint.

135.    The Federal Rules of Civil Procedure require all litigants to use their real names. Specifically, Fed. R. Civ. P. 17(a)(1) requires, among other things: "An action must be prosecuted in the name of the real party in interest." Other court rules include the same mandate. *See*, *e.g.*, Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties … .")

136.    Prior to amending the Complaint in Case 2(b) to add anonymous parties to the proceeding, Defendants did not request nor receive leave of Court to proceed via pseudonym.

137.    Defendants' inclusion of anonymous parties in the Complaint in Case 2(b) without leave of court violated the Federal Rules of Civil Procedure. This violation was intentional and malicious in that Defendants believed the use of anonymous parties would make it easier for them to needlessly prolong the litigation and to needlessly increase the cost of the litigation by forcing Plaintiffs to challenge this improper conduct in various motions before Defendants simply abandoned the case.

138.    Defendants' actions in willfully disregarding and violating court rules for

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

the purpose of increasing the financial harm suffered by Plaintiffs was malicious and not proper in the regular course of the proceedings.

139.   On May 19, 2020, Mr. and Mrs. Ivchenko (acting through counsel) filed a Motion to Dismiss Case 2(b) pursuant to Fed. R. Civ. P. 41(a)(2). This motion asked the Court to dismiss the claims of all parties, including both Mrs. Ivchenko and the 20 anonymous plaintiffs, without prejudice.

140.   In response, Plaintiffs indicated that they did not object to the 20 anonymous plaintiffs' request for dismissal without prejudice, but they objected to the request as it related to Mrs. Ivchenko. As to Mrs. Ivchenko, Plaintiffs noted that she had filed and dismissed one prior action asserting the same claims based on the same facts, and that any dismissal of Case 2(b) should be with prejudice as to Mrs. Ivchenko.

141.   On June 26, 2020, the District Court issued an order in which it dismissed all of Mrs. Ivchenko's claims in Case 2(b) with prejudice. This order of dismissal represents a final, on the merits, adjudication of Mrs. Ivchenko's claims.

142.   Case 2(b) was resolved in favor of Plaintiffs as it relates to Mr. and Mrs. Ivchenko's claims.

### LITIGATION CONTINUES—CASE 3

143.   On May 1, 2020, Mr. Ivchenko filed a new action against Plaintiffs in Maricopa County Superior Court Case No. CV2020-093006 ("Case 3"). A true and correct copy of the Complaint in Case 3 is attached hereto as Exhibit H.

144.   Similarly to Case 2(b), the Complaint in Case 3 included claims on behalf of 20 anonymous Plaintiffs identified as "John Doe" and "Jane Does".

145.   Prior to filing Case 3, Mr. Ivchenko neither requested nor received leave of Court to permit the plaintiffs to proceed via pseudonym.

146.   Mr. Ivchenko's inclusion of anonymous parties in the Complaint in Case 3 violated the Arizona Rules of Civil Procedure. This violation was intentional and malicious in that Mr. Ivchenko believed the use of anonymous parties would make it easier for him to needlessly prolong the litigation and to needlessly increase the cost of

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

the litigation by forcing Plaintiffs to challenge this improper conduct in various motions.

147.   Mr. Ivchenko's actions in willfully disregarding and violating court rules for the purpose of increasing the financial harm suffered by Plaintiffs was not proper in the regular course of the proceedings.

148.   The Complaint in Case 3 included three parties, identified as John Does 8, 9 & 10, who were allegedly residents of the State of Florida.

149.   The Complaint in Case 3 asserted claims on behalf of John Does 8, 9 & 10 for violations of A.R.S. § 44–7902(B), unlawful appropriation under Arizona common law, and invasion of privacy/false light under Arizona common law.

150.   The Complaint in Case 3 specifically omitted any reference to the location where John Does 8, 9 & 10 were arrested. The decision to omit such reference was made by Mr. Ivchenko.

151.   John Does 8, 9 & 10 were arrested in Florida, not Arizona.

152.   Before Case 3 was filed, Mr. Ivchenko knew, or reasonably should have known, John Does 8, 9 & 10 were arrested in Florida, not Arizona.

153.   Following their arrests in Florida, the names and mugshots of John Does 8, 9 & 10 were published on the Internet by the arresting law enforcement agencies in Florida. After this information was published on the Internet, it was aggregated and republished on one or more of Travis's websites without any substantive changes or additions.

154.   No part of the claims of John Does 8, 9 & 10 arose in Arizona, nor were their claims based on conduct which occurred in Arizona. Mr. Ivchenko knew, or reasonably should have known, this before Case 3 was filed.

155.   Under the facts of Case 3, no reasonable lawyer would have believed that Arizona substantive law applied to John Does 8, 9 & 10.

156.   As a matter of law, Arizona law does not apply to a person who is arrested in another state, and whose mugshot or other arrest information is published on the Internet by a person located in another state.

157.   Because the Complaint in Case 3 did not appear to contain any facts showing that Arizona law applied to John Does 8, 9 & 10, on May 12, 2020, Plaintiffs filed a Motion to Dismiss which alternatively requested an order requiring John Does 8, 9 & 10 to provide a more definite statement explaining why Arizona law applied to them.

158.   Even though he knew there was no reasonable basis for arguing that Arizona law applied to them, Mr. Ivchenko made a tactical decision to include John Does 8, 9 & 10 as parties in Case 3 for the sole purpose of attempting to avoid federal diversity jurisdiction over the case. Mr. Ivchenko made this decision because he believed that Plaintiffs were more likely to prevail in federal court as than in state court.

159.   Mr. Ivchenko intentionally and wrongfully joined John Does 8, 9 & 10 as parties in an attempt to defraud the federal Court into believing that it did not have diversity jurisdiction over Case 3.

160.   Notwithstanding Mr. Ivchenko's fraudulent conduct, Case 3 was removed to the United States District Court on June 9, 2020.

161.   At the time the case was removed, the federal court properly had diversity jurisdiction over the matter.

162.   Despite knowing there was no reasonable factual or legal basis to challenge federal jurisdiction, on July 9, 2020, Mr. Ivchenko filed a Motion to Remand Case 3. The motion was filed in bad faith and with knowledge that it was groundless.

163.   While Mr. Ivchenko's Motion to Remand was pending, Plaintiffs filed a motion seeking jurisdictional discovery. Specifically, Plaintiffs asked the Court to allow discovery into the location(s) where John Does 8, 9 & 10 were arrested.

164.   On November 12, 2020, the U.S. District Court issued an order in Case 3 granting Plaintiffs' request for jurisdictional discovery.

165.   Immediately following the Court's order, on November 12, 2020, Plaintiffs' counsel sent an email to Mr. Ivchenko asking him for his position regarding the best way to proceed with jurisdictional discovery.

166.   Mr. Ivchenko responded via email later that same day. A true and correct

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

copy of Mr. Ivchenko's email response is attached hereto as <u>Exhibit I</u>.

167.   In his November 12th email, rather than permitting the case to proceed in federal court, Mr. Ivchenko threatened to dismiss Case 3 and to file more individual lawsuits against Plaintiffs in state court.

168.   In his November 12th email, Mr. Ivchenko further threatened to bring legal action against Plaintiffs (and against Plaintiff's counsel) simply because Plaintiffs published truthful, factual public records regarding Mrs. Ivchenko on Travis's websites (including bodycam footage taken at the time of Mrs. Ivchenko's arrest).

169.   The next day, on November 13, 2020, Mr. Ivchenko followed through on his threat by filing a Notice of Voluntary Dismissal of Case 3.

170.   Mr. Ivchenko dismissed Case 3 because he believed that based on the Court's order allowing jurisdictional discovery, it was likely remand would be denied and that as a result, the District Court would consider the merits of the case.

171.   Mr. Ivchenko believed that if the federal Court considered the merits of the case, the case would be dismissed and/or otherwise resolved in favor of Plaintiffs.

172.   Mr. Ivchenko voluntarily dismissed Case 3 solely for the purpose of preventing the Court from considering the merits of the case and for the purpose of avoiding a loss on the merits.

173.   Voluntarily dismissing a meritless action solely to *prevent* the court from considering and ruling on the merits of the dispute is not proper in the regular course of the proceedings.

174.   At least one or more of the plaintiffs in Case 3 were also plaintiffs in Case 2(b). As such, pursuant to Fed. R. Civ. P. 41(a)(1)(B), the dismissal of Case 3 operated as an adjudication on the merits in favor of Plaintiffs.

175.   Since dismissing Case 3, Mr. Ivchenko has continued to file additional lawsuits against Plaintiffs based on their aggregation and republication of arrest records.

176.   Mr. Ivchenko has engaged in a pattern of filing, dismissing, and refiling successive identical lawsuits for the purpose of harassment.

GINGRAS LAW OFFICE, PLLC
4802 E. Ray Road, #23-271
PHOENIX, AZ 85044

**FIRST CAUSE OF ACTION**
**(Malicious Prosecution — Case 2)**
**(Against All Defendants)**

177.   Arizona recognizes the tort of "malicious prosecution" which is also sometimes referred to as a "wrongful use of civil proceedings".

178.   The elements of the tort are set forth in the REVISED ARIZONA JURY INSTRUCTIONS (CIVIL), 6^(TH), INTENTIONAL TORTS 19—Malicious Prosecution.

179.   By commencing Case 2, Mr. and Mrs. Ivchenko, initiated or took active part in the prosecution of a civil proceeding against Plaintiffs.

180.   As it relates to the claims initially brought by Mrs. Ivchenko, Case 2 was terminated in favor of Plaintiffs on June 26, 2020 when the case was dismissed with prejudice.

181.   As it relates to the claims initially brought by Mr. Ivchenko in Case 2, the action was terminated in favor of Plaintiffs on June 26, 2020 when the case was dismissed with prejudice.

182.   In both commencing and continuing to pursue Case 2, Mr. and Mrs. Ivchenko acted without probable cause.

183.   Specifically, at the time Case 2 was commenced, Mr. and Mrs. Ivchenko knew one or more claims lacked probable cause for the following reasons:

    a.   The applicable statute of limitations expired before the action was filed;

    b.   The claims were based on the publication of information that was factually true;

    c.   The claims were based on the publication of information involving matters of public interest/concern (specifically, the arrest and criminal charges filed against Renee Ivchenko, and the resolution of same);

    d.   The claims were based on speech previously determined by the United States Supreme Court to be entitled to First Amendment protection;

    e.   The claims were based on the aggregation and republication of existing

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

online content which is protected under federal law, specifically by the Communications Decency Act, 47 U.S.C. § 230(c)(1);

f.   The claims were based on the publication of privileged information including matters of public record and information that was a fair and accurate summary of information contained in public records;

g.   The claims were based on factual allegations which Mr. and Mrs. Ivchenko knew to be completely false at the time the allegations were made—*to wit*: the allegation that Plaintiffs extorted, or attempted to extort, the payment of money or anything else of value from Mrs. Ivchenko for the purpose of removing her mugshot and/or arrest information from Travis's websites;

h.   The claims were based on factual allegations which Mr. and Mrs. Ivchenko knew to be completely false at the time they were made—*to wit*: that Plaintiffs published defamatory statements on Twitter about Mr. and/or Mrs. Ivchenko.

184.   Defendants commenced and continued to prosecute Case 2 with malice.

185.   Among other things, Defendants' malice may be properly inferred from the complete lack of probable cause both at the time Case 2 was filed, and during its continuation. *See Daniels v. Robbins*, 182 Cal. App. 4th 204, 226, 105 Cal. Rptr. 3d 683, 700 (Cal.App. 4th Dist. 2010) (holding in a malicious prosecution action, "malice can be inferred when a party continues to prosecute an action after becoming aware that the action lacks probable cause.")

186.   Defendants did not commence or continue to prosecute Case 2 for any legitimate reason or to resolve any legitimate claims.

187.   Instead, Defendants intended to use the lawsuit as a form of harassment and to hopefully cause so much financial harm to Plaintiffs that Plaintiffs would either be unable to continue defending the action or they would be forced to resolve the case in a manner that would allow Defendants to effectively seize control of Travis's websites.

188.   Defendants further used Case 2 as form of economic extortion wherein they hoped to force Plaintiffs to settle the groundless claims by agreeing to give Defendants "removal credits" which would have allowed them to obtain the removal of pages from Travis's website upon demand.

189.   In turn, Defendants planned to profit by selling these "removal credits" by charging money to third parties appearing on Travis's websites who wanted to remove their mugstiffs from those sites.

190.   Prior to commencing Case 2, Mr. Ivchenko's counsel, David Ferrucci, previously represented an individual named SAHAR SARID ("Mr. Sarid") and an entity called Mugshots.com, LLC, among others, in a lawsuit filed in the United States District Court for the Northern District of Illinois entitled *Peter Gabiola v. Sahar Sarid*, *et al.*, Case No. 16-cv-02076 (the "Gabiola litigation").

191.   Mr. Sarid was the founder and operator of a website called Mugshots.com.

192.   Similarly to Travis's websites, Mugshots.com aggregated mugshots and arrest records from various sources.

193.   Among other things, the plaintiff in the Gabiola litigation alleged that Mr. Sarid used Mugshots.com to extort money by demanding payments to remove mugshots.

194.   This allegation was true – for at least some period of time, Mr. Sarid (either directly or indirectly) charged and/or accepted fees to remove mugshots from Mugshots.com.

195.   Based on his prior experience representing Mr. Sarid and Mugshots.com, LLC, Mr. Ferrucci knew that charging money to remove mugshots from such a website could be extremely profitable.

196.   Based on his prior experience representing Mr. Sarid and Mugshots.com, LLC, Mr. Ferrucci knew that aggregating and publishing mugshots *without* demanding or accepting money to remove them was not unlawful.

197.   Based on his prior experience representing Mr. Sarid and Mugshots.com, LLC, Mr. Ferrucci knew that aggregating and publishing mugshots *without* demanding or

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

accepting money to remove them was protected speech under the First Amendment.

198. In 2018, Sahar Sarid was arrested and indicted in the State of California. Among other things, Mr. Sarid charged with multiple counts of criminal extortion relating to his operation of Mugshots.com and his demand for money to remove mugshots from that site.

199. Following his arrest in California, Mr. Sarid no longer charged money to remove mugshots from Mugshots.com.

200. Following his arrest in California, Mr. Sarid ended his relationship with Mr. Ferrucci.

201. Mr. Ivchenko knew about the relationship between Mr. Ferrucci and Mr. Sarid prior to the commencement of Case 2.

202. Prior to commencing Case 2, Mr. Ivchenko knew that Mr. Sarid had earned a substantial amount of money from charging fees to remove mugshots from his website.

203. Based on that knowledge, Mr. Ivchenko decided to file Case 2 against Plaintiffs for the purpose of attempting to force Plaintiffs to grant Defendants "removal credits" which could be sold to third parties for money, similar to the practices used by Mr. Sarid prior to his arrest.

204. Defendants, and each of them, believed that if Plaintiffs would agree to give them the ability to remove content upon demand, the sale of "removal credits" relating to Travis's websites could be potentially worth millions of dollars.

205. Prior to the commencement of this action, Mr. Ivchenko demanded that Plaintiffs provide him with 2,400 "removal credits" which he could use to obtain the removal of 2,400 mugshots from Travis's websites. Assuming each credit could be sold for $1,000 each, the value of this demand was at least $2,400,000.00.

206. The filing of groundless litigation for the purposes of economic extortion is not a proper or legitimate use of the court system.

207. The intentional continuation of groundless litigation for the purposes of economic extortion is not a proper or legitimate use of the court system.

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

208. The conduct of Defendants in commencing and continuing Case 2 without probable cause and with malice was a cause of injury, damage, loss or harm to Plaintiffs. Such harm includes all attorney's fees and costs incurred in the defense of Case 2, emotional distress, and damage to Plaintiffs' reputation.

209. Defendants, and each of them, through the commencement and continuation of Case 2, intended to cause injury to Plaintiffs and did, in fact, cause substantial injury to Plaintiffs in an amount to be proven at trial.

210. Defendants' wrongful conduct was motivated by spite, ill will, and a desire to unlawfully profit from their actions.

211. Defendants, and each of them, through the commencement and continuation of Case 2, consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others.

212. Plaintiffs are entitled to an award of punitive damages against each Defendant in an amount sufficient to punish their unlawful conduct and to deter others from acting in a similar manner.

**SECOND CAUSE OF ACTION**
**(Abuse of Process—Case 2)**
**(Against All Defendants)**

213. Plaintiffs repeat and reallege the allegations of ¶¶ 164–212.

214. Arizona recognizes the tort of Abuse of Process.

215. The elements of the tort are set forth in the REVISED ARIZONA JURY INSTRUCTIONS (CIVIL), 6TH, INTENTIONAL TORTS 18.1—Abuse of Process.

216. Defendants, and each of them, willfully used Case 2 against Plaintiffs in the manner set forth above.

217. Defendants, and each of them, used Case 2 in a wrongful manner that was not proper in the normal course of the proceedings.

218. Specifically, Defendants, and each of them, commenced and continued

GINGRAS LAW OFFICE, PLLC
4802 E. Ray Road, #23-271
PHOENIX, AZ 85044

1  Case 2 knowing that the entire action was groundless.

2      219.   Furthermore, Defendants, and each of them, sought to use Case 2 as a form

3  of harassment and to exert economic pressure to induce Plaintiffs into a settlement in

4  which Defendants would receive "removal credits" which Defendants had no legal right

5  to obtain.

6      220.   Defendants engaged in an abuse of process by seeking to delay and avoid a

7  disposition on the merits of Case 2 for as long as possible and for the improper purpose

8  of making the case as expensive as possible, thereby increasing the odds that Plaintiffs

9  would be unable to bear the cost of defense. By doing so, Defendants hoped to force

10  Plaintiffs to settle in a manner which allowed Defendants to unlawfully profit from their

11  actions by selling "removal credits" relating to Travis's websites.

12      221.   Defendants engaged in abuse of process by, among other things:

13          a.   Including factual allegations in the Complaint which they knew to be

14              false;

15          b.   Asserting claims they knew were untimely;

16          c.   Asserting claims they knew were legally groundless;

17          d.   Refusing to dismiss claims they knew to be groundless;

18          e.   Amending the Complaint to add new claims from new anonymous

19              parties in violation of the Rules of Civil Procedure and for the sole

20              purpose of needlessly expanding the litigation and making it more

21              costly to resolve;

22          f.   Amending the Complaint to improperly add new claims from new

23              anonymous parties which did not arise out of the same transaction,

24              occurrence, or series of transactions or occurrences as the claims of the

25              other parties for the sole purpose of needless expanding the litigation

26              and making it more expensive to resolve;

27          g.   Amending the Complaint while dispositive motions were pending

28              despite previously refusing to withdraw or modify any claims in the

GINGRAS LAW OFFICE, PLLC
4802 E. Ray Road, #23-271
PHOENIX, AZ 85044

case;

h. Dismissing the action while dispositive motions were pending in order to prevent the court from considering the merits of the case;

i. Dismissing the action while dispositive motions were pending in order to avoid a loss on the merits.

222. In this manner, Defendants unlawfully engaged in an abuse of process by using Case 2 primarily for an improper purpose or ulterior motive.

223. Defendants' wrongful use of the court's process in Case 2 caused injury, damage, loss or harm to Plaintiffs in an amount to be proven at trial.

224. Defendants' wrongful conduct was motivated by spite, ill will, and a desire to unlawfully profit from their actions.

225. Defendants, and each of them, through the commencement and continuation of Case 2, consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others.

226. Plaintiffs are entitled to an award of punitive damages against each Defendant in an amount sufficient to punish their unlawful conduct and to deter others from acting in a similar manner.

**THIRD CAUSE OF ACTION**
**(Malicious Prosecution—Case 3)**
**(Against Andrew Ivchenko)**

227. Plaintiffs repeat and reallege the allegations of ¶¶ 164–212.

228. Mr. Ivchenko filed Case 3 on May 1, 2020.

229. Case 3 was resolved in favor of Plaintiffs on November 13, 2020 when Mr. Ivchenko voluntarily dismissed the case pursuant to Fed. R. Civ. P. 41(a). This dismissal was on the merits as to at least one or more of the plaintiffs in Case 3 who were also plaintiffs in Case 2(b).

230. Furthermore, the voluntarily dismissal of Case 3 reflects a favorable

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

termination because Mr. Ivchenko's decision to dismiss that action was based solely on his desire to avoid a loss on the merits.

231.    Mr. Ivchenko initiated and continued Case 3 without probable cause and with malice as alleged in ¶¶ 164–212.

232.    Mr. Ivchenko's conduct in commencing and continuing Case 3 without probable cause and with malice was a cause of injury, damage, loss or harm to Plaintiffs. Such harm includes all attorney's fees and costs incurred in the defense of Case 3, emotional distress, and damage to Plaintiffs' reputation.

233.    Mr. Ivchenko, through the commencement and continuation of Case 3, intended to cause injury to Plaintiffs and did, in fact, cause substantial injury to Plaintiffs in an amount to be proven at trial.

234.    Mr. Ivchenko's wrongful conduct was motivated by spite, ill will, and a desire to unlawfully profit from their actions.

235.    Mr. Ivchenko, through the commencement and continuation of Case 3, consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others.

236.    Plaintiffs are entitled to an award of punitive damages against Mr. Ivchenko in an amount sufficient to punish their unlawful conduct and to deter others from acting in a similar manner.

### FOURTH CAUSE OF ACTION
### (Abuse of Process—Case 3)
### (Against Andrew Ivchenko)

237.    Plaintiffs repeat and reallege the allegations of ¶¶ 164–212.

238.    Mr. Ivchenko used Case 3 in a wrongful manner that was not proper in the course of the proceedings.

239.    In addition to the wrongful conduct alleged above, Mr. Ivchenko specifically engaged in an abuse of process as to Case 3 by filing that action knowing it was groundless for the purpose of continuing his unlawful attempt to use the litigation to

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

exert financial pressure on Plaintiffs in the hopes of obtaining "removal credits" which Mr. Ivchenko planned to sell to third parties at a profit.

240.    In short, by engaging in the serial *filing-dismissal-refiling-dismissal-refiling* of substantially identical groundless cases, including Case 3, Mr. Ivchenko engaged in an abuse of process by using groundless litigation primarily to harass Plaintiffs, and to inflict financial pressure and damage in the hopes that Plaintiffs would agree to settle the action by giving Mr. Ivchenko "removal credits" potentially worth millions of dollars.

241.    Mr. Ivchenko engaged in an abuse of process by including anonymous parties in the Complaint in Case 3 in direct violation of the Rules of Civil Procedure. This violation was intentional and malicious in that Mr. Ivchenko believed the use of anonymous parties would make it easier for him to needlessly prolong the litigation, to avoid a disposition on the merits, and to needlessly increase the cost of the litigation by forcing Plaintiffs to challenge this improper conduct in various motions.

242.    Mr. Ivchenko's actions in willfully disregarding and violating court rules for the purpose of increasing the financial harm suffered by Plaintiffs was not proper in the regular course of the proceedings.

243.    Mr. Ivchenko's abuse of process committed in Case 3 was a cause of injury, damage, loss or harm to Plaintiffs. Such harm includes all attorney's fees and costs incurred in the defense of Case 3, emotional distress, and damage to Plaintiffs' reputation.

244.    Mr. Ivchenko, through the commencement and continuation of Case 3, intended to cause injury to Plaintiffs and did, in fact, cause substantial injury to Plaintiffs in an amount to be proven at trial.

245.    Mr. Ivchenko's wrongful conduct was motivated by spite, ill will, and a desire to unlawfully profit from their actions.

246.    Mr. Ivchenko, through the commencement and continuation of Case 3, consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others.

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

247.   Plaintiffs are entitled to an award of punitive damages against Mr. Ivchenko in an amount sufficient to punish their unlawful conduct and to deter others from acting in a similar manner.

### FIFTH CAUSE OF ACTION
### (Declaratory Relief)
### (Against Andrew and Renee Ivchenko)

248.   A current dispute exists between Plaintiffs and Defendants Andrew and Renee Ivchenko regarding their respective legal rights and duties.

249.   As noted herein, Mr. Ivchenko has repeatedly alleged that Travis's websites are engaged in unlawful conduct based on the following common facts:

        a.   Travis's websites aggregate mugshots and other criminal records from existing online sources;

        b.   Travis's websites display mugshots and other criminal records aggregated from existing online sources;

        c.   Travis's websites earn money by displaying Google AdSense ads on pages which also contain mugshots and criminal records.

250.   Among other things, Mr. Ivchenko has alleged the common facts set forth in ¶ 249 above violate Arizona statutory and common law including, but not limited to, the Arizona Mugshot Operator's Act, A.R.S. § 44–7902(B).

251.   Mr. Ivchenko has further alleged that the common facts set forth in ¶ 249 violate the common law rights of any person whose mugshot or criminal records appear on Travis's websites under the theories of misappropriation of name/likeness and/or false light.

252.   Mr. Ivchenko has further alleged that the common facts set forth in ¶ 249 are not subject to the immunity provisions of the Communications Decency Act, 47 U.S.C. § 230(c)(1).

253.   Mr. Ivchenko has further alleged that the republication of arrest records is not protected by either the First Amendment to the U.S. Constitution, or the Arizona Constitution.

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

254.    Despite being asked to do so, Mr. Ivchenko has refused to provide any legal authority supporting his positions.

255.    Mr. Ivchenko has threatened to continue filing more lawsuits against Plaintiffs unless they agree to, among other things, give him "removal credits" allowing him to obtain the removal of pages from Travis's websites.

256.    Pursuant to 28 U.S.C. § 2201(a), A.R.S. § 12–1831, and Fed. R. Civ. P. 57, Plaintiffs are entitled to declaratory relief as follows:

      a. Plaintiffs are entitled to declaratory judgment finding that the manner of operation of Travis's websites, including the aggregation and display of content copied from existing online websites, is fully protected under the Communications Decency Act, 47 U.S.C. § 230(c).

      b. Plaintiffs are entitled to declaratory judgment finding that the Arizona Mugshot Operator's Act, A.R.S. § 44–7902(B) does not apply to the operation of Travis's websites or to Plaintiffs to the extent the site simply aggregates and republishes mugshots and arrest records which have been previously published on the Internet by third parties;

      c. Plaintiffs are entitled to declaratory judgment finding that the manner of operation of Travis's websites, including the aggregation and display of content copied from existing online websites, is protected by the First Amendment to the U.S. Constitution and Arizona law;

      d. Plaintiffs are entitled to declaratory judgment finding the display of mugshots and criminal records in the manner employed by Travis's websites is not unlawful under any legal theory recognized in the State of Arizona.

257.    Plaintiffs are entitled to a declaration finding that their publication of public records relating to Renee Ivchenko, including but not limited to, bodycam footage, police reports, and other public records, is protected speech under the First Amendment and is not unlawful under any legal theory recognized in the State of Arizona.

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

### SIXTH CAUSE OF ACTION
### (Vexatious Litigant Designation)
### (Against Andrew and Renee Ivchenko)

258.  To the extent they have acted as *pro se* litigants, Defendants Andrew and Renee Ivchenko are vexatious litigants within the meaning of A.R.S. § 12–3201.

259.  Even while represented by counsel, Defendants Andrew and Renee Ivchenko have engaged in seriously vexatious conduct which has resulted in a substantial waste of the Court's time and resources and which has caused substantial harm to Plaintiffs.

260.  Specifically, as noted above, Andrew and Renee Ivchenko have engaged in the following vexatious conduct:

  a.  Repeated filing, dismissal, and refiling of groundless court actions solely or primarily for the purpose of harassment;

  b.  Unreasonably expanding or delaying court proceedings; and

  c.  Bringing court actions without substantial justification.

261.  Pursuant to A.R.S. § 12–3201 and the inherent authority of the Court, Plaintiffs are entitled to an order declaring that Defendants Andrew and Renee Ivchenko are vexatious litigants and ordering that they may not file any new lawsuits against Plaintiffs in the State of Arizona or the United States District Court for the District of Arizona without prior written leave of Court.

### JURY DEMAND

Plaintiffs demand trial by jury as to all issues so triable.

///

///

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A.    For compensatory damages of no less than $75,000 and in an amount according to proof at trial;

B.    For punitive damages in an amount according to proof at trial;

C.    For a judgment declaring the rights and legal relations of the parties as set forth above;

D.    For an order finding Andrew and Renee Ivchenko are vexatious litigants, and ordering that they may not file any new actions against Plaintiffs without prior leave of Court;

E.    For an award of all costs of suit incurred herein;

F.    For such other and further relief as the Court deems just and proper.

DATED: January 21, 2021          **GINGRAS LAW OFFICE, PLLC**

David S. Gingras, Esq.
Attorney for Plaintiffs

GINGRAS LAW OFFICE, PLLC
4802 E. Ray Road, #23-271
PHOENIX, AZ 85044

## <u>VERIFICATION</u>

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United State of America that the foregoing is true and correct.

Executed on January 21, 2021.                    /s/ Travis Grant
                                                  Travis Grant

GINGRAS LAW OFFICE, PLLC
4802 E. Ray Road, #23-271
PHOENIX, AZ 85044