David S. Gingras, #021097
**Gingras Law Office, PLLC**
4802 E. Ray Road, #23-271
Phoenix, AZ 85044
Tel.: (480) 264-1400
Fax: (480) 248-3196
David@GingrasLaw.com

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

Travis Grant, *et al.*,

Plaintiffs,

v.

Andrew Ivchenko, *et al.*,

Defendants.

Case No. 21-CV-00108-PHX-JJT

**NON-PARTY DAVID S. GINGRAS' RESPONSE TO DEFENDANTS' MOTION TO SEAL**

Non-party[1] David S. Gingras respectfully submits the following response to Defendants' Motion to Seal (Doc. 31). The motion should be denied.

## I. INTRODUCTION

Defendants ask the Court to seal the *entire* record in this matter. Because there is such a strong presumption against sealing, such motions are routinely denied, even if unopposed.[2] Moreover, "'A party who seeks to seal an *entire* record faces an even heavier burden' than a party seeking to seal a particular document."[3]

While the undersigned believes Defendants' motion would likely be denied even if unopposed, this response is nevertheless offered to correct two false/misleading statements contained in the motion. The goal is to ensure the record contains a complete and *accurate* statement of the facts.

[1] This brief is submitted by the undersigned on his own behalf, not on behalf of Plaintiffs. The undersigned previously appeared as counsel of record for Plaintiffs from the commencement of the case until December 2021 when the matter was settled. At present, the undersigned no longer represents Plaintiffs in any capacity.

[2] *See Blue Cross of Cal., Inc. v. Insys Therapeutics Inc*., 2018 WL 11352696, *1 (D.Ariz. 2018) (denying unopposed cross-motions to seal).

[3] *Sadeh v. Paradigm Treatment Center LLC*, 2020 WL 7263387, *2 (D.Ariz. 2020) (emphasis in original) (quoting *Oliner v. Kontrabecki*, 745 F.3d 1024, 1026 (9th Cir. 2014)).

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

## II. DISCUSSION

This brief addresses two issues. First, Defendants claim the undersigned was disciplined by the State Bar of Arizona for conduct relating to the prior litigation which preceded this action. Oddly, while devoting much of their brief (and *hundreds* of pages of exhibits) to this topic, Defendants then expressly *disclaim* this "fact" as a basis for sealing the record; "To be clear – Defendants are not basing this motion on any final decision by the Arizona Supreme Court regarding Mr. Gingras' actions …." Mot. at 9:22–23. Really? Then why even raise this collateral issue?

To be clear – Defendants' claim about the undersigned being disciplined for conduct related to this matter (or any other matter relating to Defendants) **is 100% false**. As explained below, the undersigned has not been disciplined by the State Bar for conduct relating to Defendants. Of course, since Defendants do not rely on this issue as a basis for sealing this case, the Court need not resolve the question of who is telling the truth and who is not. Still, this blatant lie will not go unanswered.

This leads to the second, more substantive, point. Defendants argue the entire record in this case should be sealed for a single reason – to protect them from "reputational harm" (ironic, given Defendants' extensive personal attacks against others). Defendants' argument is insufficient to seal the record because: A.) alleged reputational harm, standing alone, is not a sufficient basis to seal an entire court record, and B.) even if the record in this case was sealed, it would do nothing to prevent any "reputational harm" to Defendants.

This is so because the facts and details of this case have already been republished in other public forums, including Westlaw, Lexis-Nexis, and numerous other third-party websites like PacerMonitor.com and CourtListener.com. The same information also currently exists in public records filed with the Maricopa County Superior Court in a related case. Nothing this Court can do will change any of these facts. Thus, sealing the record in this case will do *nothing* to benefit Defendants.

For these reasons, the motion to seal should be denied.

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

**a. The Undersigned Was NOT Disciplined By The Arizona Bar**

On pages 9–13 of their motion, Defendants present a story claiming the undersigned was disciplined by the State Bar of Arizona for conduct relating to this case. This story is supported by several exhibits including an "Order of Admonition, And Costs, dated March 23, 2022, relating to Attorney David S. Gingras."

Clearly, in this discussion, Defendants hope to convince the Court the undersigned was actually found to have engaged in misconduct in the prior litigation, and that this "fact" justifies the extraordinary relief Defendants seek. Unfortunately, while pleading for this Court to protect *them* from reputational harm, Defendants have simply lied to the Court about what occurred here, obviously for the improper purpose of gratuitously (and falsely) inflicting reputational harm on the undersigned.

At the same time, Defendants' motion clearly indicates their request for relief is *not* based on their allegation that the undersigned was disciplined by the State Bar. For that reason, the issue will *not* be discussed in detail in this response.

However, in order to ensure an accurate record, the true facts are set forth in an Appendix submitted herewith. Because this issue is not relevant to any issue the Court must decide, this discussion would ordinarily be reduced to a footnote, but due to the length, a separate Appendix is offered instead.

**b. Reputational Harm Is Not A *Compelling Governmental* Interest**

Turning to the merits, the standards are well-settled; "in the context of civil proceedings, the decision to seal the entire record of the case ... must be necessitated by *a compelling governmental interest* and [be] narrowly tailored to that interest." *Oliner v. Kontrabecki*, 745 F.3d 1024, 1026 (9th Cir. 2014) (emphasis added) (quoting *Perez–Guerrero v. U.S. Att'y. Gen*., 717 F.3d 1224, 1235 (11th Cir. 2013)). Conclusory allegations of harm will not suffice. *See Fed. Trade Comm'n v. Noland*, 2022 WL 939926, at *4 (D.Ariz. 2022). In addition, allegations of reputational harm are *per se* insufficient; "injury to … reputation is an insufficient reason 'for repressing speech that would otherwise be free.'" *In re McClatchy Newspapers, Inc.,* 288 F.3d

GINGRAS LAW OFFICE, PLLC
4802 E. Ray Road, #23-271
PHOENIX, AZ 85044

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

369, 374 (9th Cir. 2002) (quoting *Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 841–42, 98 S.Ct. 1535, 56 L.Ed.2d 1 (1978)).

Assuming the moving party shows sealing would further a *compelling* governmental interest, the Court must then "conscientiously balance the competing interests of the public and the party who seeks to keep certain judicial records secret." *Noland*, 2022 WL 939926, at *4 (quoting *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006)). But when a party seeks to retroactively seal information which has *already* been publicly disclosed, that factor weighs heavily, if not conclusively, against sealing. *See Noland*, 2022 WL 939926, at *6 (citing *In re Application to Unseal*, 891 F. Supp. 2d 296, 300 (E.D.N.Y. 2012) ("Any balancing of the interests ... would be academic as the information the Government and Doe seek to maintain sealed has already been publicly revealed; *the cat is out of the bag, the genie is out of the bottle*.... [T]he docket sheet revealing Doe's identity, conviction, and cooperation is accessible on Westlaw and Lexis.") (emphasis added)).

Here, the <u>sole</u> basis offered for sealing is that Defendants claim this action involved "unfounded allegations of criminal misconduct against both Defendants …." Mot. at 7:18. For that reason, Defendants argue the entire record in the case should be sealed, because: "Absent a sealing order, Plaintiffs' spiteful, libelous, scandalous (and unsubstantiated) allegations will continue to cause Defendants reputational harm." Mot. at 7:22–24.

These arguments warrant three brief remarks.

First, at least as it relates to Mrs. Ivchenko, the issue of her criminal conduct is hardly "unsubstantiated"; it has already been litigated and resolved against her. Specifically, Mrs. Ivchenko was arrested and charged with a felony; *viz*., aggravated assault on a police officer. Records relating to Mrs. Ivchenko's criminal case remain publicly available on the Maricopa County Superior Court's website here: http://www.superiorcourt.maricopa.gov/docket/CriminalCourtCases/caseInfo.asp?caseNumber=CR2018-119949.

Following her arrest, Mrs. Ivchenko filed a lawsuit in this court against the Scottsdale Police. *See Ivchenko v. City of Scottsdale*, 2:19-cv-05834-ROS-DMF. In that action, Mrs. Ivchenko alleged, *inter alia*, the police violated her rights by arresting her without probable cause. The District Court rejected this argument, finding probable cause existed for the arrest because Mrs. Ivchenko's own pleadings admitted she committed a crime.

The Ninth Circuit affirmed that decision, explaining:

> We hold that the district court did not err in dismissing Ivchenko's disability-related claims. Her wrongful arrest theory fails because, according to Ivchenko's own pleadings, <u>she committed at least one arrestable offence</u>. Her Second Amended Complaint explains that, after her husband poured her vodka down the kitchen sink, she placed a "baseless 911 call," falsely reporting domestic violence. <u>This is a crime under Arizona law … and the fact that Ivchenko committed this act while inebriated does not make it any less so</u>.

*Ivchenko v. Scottsdale*, 2021 WL 4739642, *1 (9th Cir. 2021) (emphasis added).

Clearly, the facts and circumstances of Mrs. Ivchenko's arrest and the criminal case filed against her by the State of Arizona are matters of public record which this Court has no power to erase. Indeed, Defendants previously asked this Court (twice) to strike these allegations from the Complaint, arguing Mrs. Ivchenko's criminal history was somehow irrelevant and thus should be hidden from view (essentially the same argument Defendants repeat here for a third time).

In an order dated November 10, 2021 (Doc. 27), this Court firmly rejected these arguments, noting, "The Court strains to find any non-frivolous interpretation of Defendants' request. The recitation of Mrs. Ivchenko's criminal history forms the very basis for Case A as well as the history of the dispute presently before the Court. It is entirely relevant." Doc. 27 at 5:13–16. The Court's reasoning was well-founded on this point, and nothing has changed since then.

It is understandable that Mrs. Ivchenko is embarrassed by her arrest and wants to hide her mugshot from public view, but this does not justify the relief she seeks

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

here; "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Foltz v. State Farm Mut. Auto. Ins. Co*., 331 F.3d 1122, 1136 (9th Cir. 2003).

As it relates to Mr. Ivchenko, he correctly notes the Complaint in this matter accused him of a variety of criminal conduct. Generally speaking, the Complaint alleged that Mr. Ivchenko submitted an application to the U.S. Copyright Office seeking to register a copyright in his wife's mugshot (the booking photo taken by the Maricopa County Sherriff's Office at the time of Mrs. Ivchenko's arrest in April 2018). The Complaint also alleged Mr. Ivchenko made knowingly false statements to the Copyright Office (i.e., he falsely represented to the Copyright Office that Mrs. Ivchenko was the "author" of her own mugshot, and he also falsely represented the first publication date of the image). *See* First Amended Complaint (Doc. 14) ¶¶ 68–88. These actions, if proven, would represent federal crimes in violation of 17 U.S.C. § 506(e) which prohibits making knowingly false statements to the U.S. Copyright Office in an application for registration. *See* FAC ¶ 89.

The Complaint further alleged that after he obtained a certificate of registration for his wife's mugshot, Mr. Ivchenko sent numerous DMCA takedown demands to third party websites which contained false statements made under penalty of perjury. FAC ¶ 77. Knowingly making a false sworn statement on a DMCA notice is a federal crime in violation of 18 U.S.C. § 1621 and is further prohibited by the DMCA itself. *See* 17 U.S.C. § 512(f).

Without offering a single shred of evidence to show these allegations were false, Mr. Ivchenko argues the Court should seal the record simply because these allegations against him were "unsubstantiated". Mot. at 7:19 ("Publicizing these <u>unsubstantiated</u> allegations, which regularly appear on the internet through government websites, cause both parties damage to their personal and professional reputations.") (emphasis added). That is Mr. Ivchenko's sole argument for sealing.

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

To be clear – Mr. Ivchenko is correct the allegations against him were "unsubstantiated" in the sense they were never proven at trial. However, the *reason* the allegations were never proven at trial is because Mr. and Mrs. Ivchenko voluntarily agreed to a settlement with the Grant Family which terminated this litigation prior to trial. Had the case not settled, the Grant Family (and the undersigned) were prepared to offer *overwhelming* evidence to prove that Mr. and Mrs. Ivchenko did, in fact, commit each and every wrongful act described in the Complaint, including multiple criminal acts.

Rather than facing a public trial, Defendants chose to avoid that risk by settling. As a result of that choice, there was no opportunity (and no need) for further substantiation of the claims, nor were Defendants able to vindicate themselves.

There is simply nothing unfair or unexpected about that result. Nothing in the parties' settlement agreement required this Court (or any other) to seal records relating to the case. Nor did the settlement agreement require the Grant Family to admit their claims were groundless (nor would they have done so, given that the claims had substantial merit).

Of course, even if an agreement to seal this matter had been included as part of the settlement (which it was not), that would not, standing alone, justify the relief Defendants seek here; "The mere fact a party has designated certain materials or information as confidential pursuant to an agreement or stipulation does not establish that any legal standard for placing those materials or information under seal has been met." *Gonzalez v. US Hum. Rts. Network*, 2021 WL 4458237, at *2 (D.Ariz. 2021) (citing *Center for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096, 1101 (9th Cir. 2016)).

In short, the only basis Defendants offer for sealing is bare reputational harm. That is not a governmental interest at all, nor is it a compelling one (if it were, *every* defendant would be entitled to seal his/her records). As such, Defendants have failed to show they are entitled to the extraordinary relief requested.

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

**c. Sealing The Record Would Not Avoid Any Reputational Harm**

Because Defendants offer no compelling governmental basis for sealing, the inquiry ends. There is no need for the Court consider other issues such as whether the public's presumptive right to access court records is sufficiently outweighed by Defendants' claimed reputational harm.

Still, if the Court performed a balancing of interests, the outcome would be the same – there is simply no valid reason to seal the records in this case because: A.) the information contained on the Court's docket (i.e., the allegations of wrongdoing set forth in the Complaint) has already been publicly available for nearly *two full years*, and B.) the same information is already contained in other public records, including records of the Maricopa County Superior Court.

Defendants' motion admits the first point, noting records from this case "appear on the internet through government websites … ." Mot. at 7:19–20. Although Defendants only identify a single website – govinfo.gov – the entire docket from this case is available on multiple other websites, including Westlaw, Lexis-Nexis, and third party sites like Pacermonitor.com and CourtListener.com. *See, e.g.:*
https://www.pacermonitor.com/public/case/38004413/Grant_et_al_v_Ivchenko_et_al
https://www.courtlistener.com/docket/33974865/grant-v-ivchenko/.

Similarly, the facts/details of this case were discussed in prior rulings issued by this Court, including, for instance, the Court's order denying several motions filed by Defendants before the case was settled. *See Grant v. Ivchenko*, 2021 WL 5232330 (D.Ariz. Nov. 10, 2021). The same order is available on third party websites. *See* https://www.pacermonitor.com/public/filings/DSCDU2HA/Grant_et_al_v_Ivchenko_et_al__azdce-21-00108__0027.0.pdf; and https://storage.courtlistener.com/recap/gov.uscourts.azd.1258612/gov.uscourts.azd.1258612.27.0_1.pdf.

Because this information is already online, and has been for a long time, there is simply no basis, much less a compelling reason, to seal it *post hoc*. *See Gustafson v. Goodman Mfg. Co. LP*, 2016 WL 393640, at *3 n.5 (D.Ariz. 2016) (noting when

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

information has already been publicly available, there is no reason for sealing it after the fact; "As this information has been made available for public review, sealing it would serve no purpose.") (citing *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 n.11 (2nd Cir. 2004) (noting that "once information is public, it necessarily remains public" and further stating that "once the cat is out of the bag, the ball game is over ….") (emphasis added) (cleaned up).

The second reason why Defendants' request is improper is because the same "harmful" information they seek to seal here (the allegations of criminal wrongdoing described in the Complaint), is already a matter of public record in *other* courts. Thus, sealing the record in *this case* would do nothing to stop the further publication of the same information Defendants want to hide.

Specifically, Defendants note that several months *after* this federal action was filed in January 2021, they filed a separate but related state-court action against the undersigned and his clients. That matter, filed on August 3, 2021, was styled *Ivchenko v. Gingras*, *et al.*, Maricopa County Superior Court Case No. CV2021-093562. The online docket for the state case remains available at:

http://www.superiorcourt.maricopa.gov/docket/CivilCourtCases/caseInfo.asp?caseNumber=CV2021-093562.

Defendants mention *Ivchenko v. Gingras* in their motion, proudly boasting, "Defendants filed suit against the Grants and Mr. Gingras in state court on August 3, 2021, for their egregious abuse of process … and targeted cyber harassment of Defendants." Mot. at 3:23–26. To buttress their point, Defendants attach a copy of the Complaint from the state proceeding, along with *hundreds of pages of exhibits*, most of which are nothing more than personal attacks against the undersigned. Apparently Defendants believe their *own* false and unsubstantiated allegations against others warrant broadcasting widely, but not *true* allegations made *against* them.

However, despite mentioning *Ivchenko v. Gingras* (as if it had some bearing here), Defendants fail to note they voluntarily dismissed the case in December 2021. For the Court's information, the dispute was settled between the Grant Family and

Mr. and Mrs. Ivchenko, but the undersigned was not a party to the settlement agreement and he has not released any claims against Defendants relating to *Ivchenko v. Gingras*.

More importantly, before the case was dismissed, *Ivchenko v. Gingras* was *stayed* by the State Court at the request of the undersigned. Defendants fail to mention that in the course of explaining *why* the state case should be stayed, the undersigned described the allegations in this matter and attached a copy of the Complaint from this case as an exhibit to show the two matters were directly related. *See* Exhibit A attached hereto (which excludes the Complaint from this case which was attached as an exhibit). For clarity, the Superior Court's order staying the state court action is attached hereto as Exhibit B.

Why does this matter? Here's why — because the Complaint from this case was previously been re-filed as an exhibit in another forum (the Maricopa County Superior Court in *Ivchenko v. Gingras*). As such, even if this Court were to seal the record in this case, it would do nothing to prevent the public from seeing the allegations which gave rise to this case because anyone could freely obtain the same information from the MCSC docket (notably, Defendants have *not* asked the Superior Court to seal the record in *Ivchenko v. Gingras*, perhaps suggesting the current motion is less-than-sincere).

In any event, despite its broad powers, this Court cannot force the Maricopa County Superior Court to seal its records, nor can this Court retroactively purge the Internet of case-related material which has already been published for over a year. Even if the Court had such powers, as a matter of law, no court may retroactively prevent third parties from learning of matters which they have lawfully obtained from existing public records. *See Florida Star v. B.J.F.*, 491 U.S. 524, 533 (1989) (once information is lawfully obtained from a public record, the republication of that information cannot be constitutionally prohibited except under the most exceptional circumstances).

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

## III. CONCLUSION

For the reasons stated above, Defendants' Motion to Seal should be denied.

DATED: October 3, 2022.

**GINGRAS LAW OFFICE, PLLC**

David S. Gingras, Esq.

GINGRAS LAW OFFICE, PLLC
4802 E. Ray Road, #23-271
PHOENIX, AZ 85044

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

**APPENDIX**

As noted above, it is <u>not necessary</u> for the Court to consider or resolve any issues related to Defendants' claim that the undersigned was "disciplined" by the State Bar of Arizona for conduct relating to this case. Nevertheless, because these false statements should not remain unanswered, the following additional information is offered to ensure an accurate record.

On pages 9–13 of their motion, Defendants claim the undersigned was disciplined by the State Bar of Arizona for conduct relating to this case. This story is supported by several exhibits including an "Order of Admonition, And Costs, dated March 23, 2022, relating to Attorney David S. Gingras." Unfortunately, Defendants have lied to the Court about what occurred here. The true facts are as follows.

During the prior litigation, the unsigned determined there was evidence showing Mr. Ivchenko had engaged in criminal and other misconduct which raised a substantial question as to his honesty, trustworthiness or fitness as a lawyer, some of which is referenced in the Complaint filed in this case. As a result, the undersigned determined Rule ER 8.3 of the Rules of Professional Conduct required him to report Mr. Ivchenko's conduct to the State Bar of Arizona.

To comply with that reporting obligation, on May 7, 2020, the undersigned submitted a written "Mandatory Report of Attorney Misconduct" to the State Bar of Arizona. A copy of the written report (excluding exhibits) is attached hereto as <u>Exhibit C</u>. On May 28, 2020, the State Bar responded via letter, a copy of which is attached hereto as <u>Exhibit D</u>. In this letter, the Bar stated it was closing the matter without any investigation, because the complaint arose from pending litigation.

> The issues you raise, such as allegations of frivolous claims and lawsuits, perjury, false and misrepresented copyright claims, and inappropriate action and misrepresentation under the Digital Millennium Copyright Act, are legal issues that require a determination by a court of law. As you are involved in current, ongoing civil litigation, the court is the appropriate venue at this point to address issues related to your case, as the court is the most familiar with the facts, rules, statutes, and case law for your case. Concerns such as yours should, therefore, be addressed to the judge presiding over your proceedings. <u>It is inappropriate for the State Bar to get involved in active cases</u>, except under certain circumstances not applicable here. Further, your allegations that federal crimes were committed should be addressed to the appropriate law enforcement agency. The State Bar has no authority to investigate criminal activity.

Nearly 18 months later, in late October 2021 while extensive litigation (including this case) remained pending between the parties, Mr. Ivchenko submitted a complaint to the State Bar regarding a "settlement message" published on Plaintiff Travis Grant's website. Generally speaking, the message explained that Plaintiffs (the Grant Family) were interested in settling with anyone who had previously sued them (not including Mr. and Mrs. Ivchenko). The message set forth the terms of a proposed settlement, and it asked anyone who was interested in discussing this further to contact Mr. Grant directly.

Mr. Ivchenko claimed the settlement message (which was written by the undersigned) represented an *indirect* attempt to communicate with his clients (notwithstanding the fact that Mr. Ivchenko never disclosed the identity of his clients to the undersigned and that the undersigned reasonably believed that Mr. Ivchenko had no clients). Rather than summarily dismissing the complaint as arising from pending litigation (as it did with the complaint *against* Mr. Ivchenko), the State Bar asked the undersigned to respond to the allegations, which he did.

Among other things, the undersigned explained this type of conduct (drafting a settlement message for a client to present to an opposing party) did not violate ER 4.2 because it was expressly permitted by both an ABA formal opinion (Form. Op. 11-461), as well as the Restatement. Indeed, the Restatement offers an example which is essentially identical to the facts of Mr. Ivchenko's complaint:

> Lawyer represents Owner, who has a worsening business relationship with Contractor. From earlier meetings, Lawyer knows that Contractor is represented by a lawyer in the matter. Owner drafts a letter to send to Contractor stating Owner's position in the dispute, showing a copy of the draft to Lawyer. Viewing the draft as inappropriate, Lawyer redrafts the letter, recommending that Client send out the letter as redrafted. Client does so, as Lawyer knew would occur. **Lawyer has not violated the rule of this Section**.

Cmt. 6, § 99 of the Restatement (Third) of the Law Governing Lawyers (emphasis added) (establishing same no-contact rule as ER 4.2).



GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

Despite this point, and contrary to extensive other authority which showed Mr. Ivchenko's complaint was groundless, on March 11, 2022, the State Bar issued a *preliminary opinion* that the undersigned's conduct violated ER 4.2, and other related rules. This occurred in the context of an *informal*, pre-Complaint investigation, made before a disciplinary proceeding was even commenced.[4]

Mr. Ivchenko claims this informal *preliminary* opinion from the Bar (not from any court) somehow represents "overwhelming evidence … of extreme abuse of process…" committed by Plaintiffs and the undersigned. What Mr. Ivchenko *fails* to mention is that the preliminary "order" he cites **was subsequently vacated**, and the entire disciplinary proceeding was thereafter **dismissed** with no discipline imposed and no finding of wrongdoing by the undersigned.

Specifically, after issuing the preliminary March 11th order cited by Defendants, on May 18, 2022, the Probable Cause Committee issued a second order, attached hereto as Exhibit E. The May 22nd order vacated the March 11th order in its entirety.



The Committee's orders are final unless within 10 days of service of the subject order a Respondent files a written demand for formal proceedings pursuant to Rule 55(c)(4) (A) and (B). Respondent's demand for formal proceedings, filed on April 04, 2022, is timely. Accordingly, the Committee's order of admonition and costs is vacated, and the State Bar is directed to prepare and file a formal complaint.

**DATED** this 18 day of May, 2022

Judge (ret.) Lawrence F. Winthrop, Chair
Attorney Discipline Probable Cause

[4] A complete discussion of the attorney discipline process is beyond the scope of this appendix, but in short, the process begins *backwards*; i.e., before a formal Complaint is filed, the process begins with an *informal* investigation during which the respondent lawyer is not entitled to pursue any discovery and cannot litigate any legal defenses. These informal, pre-Complaint "orders" are non-final and do not represent a formal judgment of wrongdoing *unless* the respondent attorney accepts the outcome. If the lawyer disagrees with the pre-Complaint disposition, the matter is vacated and a formal *de novo* proceeding begins.

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

Because the undersigned objected to the Probable Cause Committee's "order" (since it was legally and factually erroneous), that order was automatically vacated. Thereafter, the State Bar filed a formal Complaint before the Presiding Disciplinary Judge, Hon. Margaret H. Downie, and the matter proceeded *de novo*.

Several months later, the State Bar moved to dismiss the disciplinary proceeding, claiming it lacked sufficient evidence to prove any wrongdoing by the undersigned. As a result, on September 21, 2022, Judge Downie issued an order, a copy of which is attached hereto as Exhibit F, dismissing the entire matter.

Contrary to Defendants' arguments, these facts do not prove any wrongdoing on the part of the undersigned. Viewed correctly, the facts simply show that Mr. Ivchenko made an *allegation* of improper conduct by the undersigned, and based on its initial review of the matter (before formal proceedings were commenced and before any discovery occurred), the State Bar issued a *preliminary* finding agreeing with Mr. Ivchenko's position.

But as it happens, the State Bar's position (and Mr. Ivchenko's) was simply wrong, both as a matter of fact and as a matter of law. And this is hardly surprising; the State Bar of Arizona has taken similar incorrect legal positions in the past. *See*, *e.g.*, *Bates v. State Bar of Arizona*, 433 U.S. 350 (1977) (holding State Bar's interpretation of ethical rule prohibiting attorney advertising violated First Amendment and was void to that extent).

In this instance, any statement that the undersigned has been "disciplined" by the State Bar for conduct relating to this case, or to Defendants, is simply categorically false.

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

# Exhibit A

Clerk of the Superior Court
*** Electronically Filed ***
T. Hays, Deputy
8/20/2021 5:13:38 PM
Filing ID 13279306

David S. Gingras, #021097
**Gingras Law Office, PLLC**
4802 E. Ray Road, #23-271
Phoenix, AZ 85044
Tel.: (480) 264-1400
Fax: (480) 248-3196
David@GingrasLaw.com

Defendant In Pro Se

**SUPERIOR COURT OF ARIZONA**

**COUNTY OF MARICOPA**

| | |
|---|---|
| RENEE IVCHENKO and ANDREW IVCHENKO, wife and husband,<br><br>Plaintiffs,<br><br>v.<br><br>DAVID S. GINGRAS, et al.,<br><br>Defendants. | Case No. CV2021-093562<br><br>**MOTION TO STAY**<br><br>(Assigned To Hon. Peter Thompson) |

Defendant David S. Gingras hereby moves this Court for an order staying this matter pending the disposition of certain matters in an earlier-filed related case which is currently proceeding in the U.S. District Court for the District of Arizona, styled *Travis Grant, et al. v. Andrew Ivchenko, et at.*, Case No. 21-CV-108 filed January 21, 2021 (the "Federal Litigation"). As explained below, the Federal Litigation involves identical parties and identical claims arising from the same events.

Accordingly, the claims asserted by the Plaintiffs in this later-filed state-court proceeding (who are both defendants in the Federal Litigation) are compulsory counterclaims under Ariz. R. Civ. P. 13(a) and Fed. R. Civ. P. 13(a). Under the compulsory counterclaim rule, these claims *must* (and may only) be asserted in the Federal Litigation, once that case reaches the pleading stage. For that reason, and based on the rule set forth in *Tonnemacher v. Touche Ross & Co.*, 186 Ariz. 125, 920 P.2d 5 (App. 1996), this Court should stay this matter until the federal court has resolved the pending litigation.

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

## I. INTRODUCTION

As explained further below, the Plaintiffs in this case—Andrew and Renee Ivchenko—are vexatious litigants. The instant dispute began three and a half years ago in April 2018 when Mrs. Ivchenko called the police in Scottsdale to report that her husband, Andrew, had assaulted her. According to pleadings filed by the Ivchenkos in other matters, Mrs. Ivchenko is a "severe" alcoholic with a long history of alcohol-related problems, including multiple contacts with law enforcement.

After Scottsdale police arrived at the Ivchenko residence, they quickly determined Mrs. Ivchenko's allegations against Mr. Ivchenko were false. Apparently, Mrs. Ivchenko made a false 911 call because she was angry that Mr. Ivchenko had poured her vodka down the sink after discovering her drinking.

Initially, rather than arresting Mrs. Ivchenko for making a false report, the police simply asked Mr. Ivchenko to leave for the night, which he agreed to do. While Mr. Ivchenko was packing a bag, Mrs. Ivchenko began arguing with police officers, demanding to speak to her husband (Mr. Ivchenko is an attorney). Due to her highly intoxicated and agitated state, the police refused to allow Mrs. Ivchenko to speak to her husband.

Angered further by this, Mrs. Ivchenko eventually struck one of the police officers in the chest. As a result, Mrs. Ivchenko was arrested and charged with various crimes, including a felony count of aggravated assault on a police officer. Her criminal case was *State v. Renee Ivchenko*, Maricopa County Superior Court Case No. CR2018–119949.

To resolve the charges, Mrs. Ivchenko signed a written statement admitting guilt, and she made a written avowal to the Court admitting the factual elements of the crime of aggravated assault.[1] In return for her admissions, Mrs. Ivchenko was allowed to participate in the Court's Felony Pretrial Intervention Program. Following the successful completion of that program, the criminal charges against Mrs. Ivchenko were dismissed.

[1] *See DEFENDANTS CONSENT TO PARTICIPATE IN DEFERRED PROSECUTION PROGRAM AND ACKNOWLEDGEMENT*, filed in CR2018–119949 on 5/15/2018.



GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

As routinely happens with all felony arrests in Maricopa County, when Mrs. Ivchenko was booked into county jail in April 2018, her mugshot and arrest information was posted on the Internet by the Maricopa County Sheriff's Office (MCSO). Afterwards, Mrs. Ivchenko's mugshot was copied and republished on numerous other websites, including one site owned by Defendant Travis Grant. As it happens, Mr. Grant owns and operates numerous websites that capture, archive and display public records including mugshots and related arrest information. As of August 2021, these websites contain more than 20 million records from 45 different U.S. states.

After seeing his wife's mugshot on the Internet, Mr. Ivchenko flew into an uncontrolled rage, unleashing an avalanche of litigation, primarily (but not solely) targeting Travis Grant, his wife Mariel Grant, and Travis's brother, Kyle (collectively, the "Grant Family"). To date, Mr. Ivchenko has commenced and/or instigated nearly <u>a dozen lawsuits</u>, including <u>eight</u> such cases against the Grant Family here in Arizona, as reflected in the chart below (the present matter is <u>Case #8</u> on this chart):

| | Case Number | Party / Business Name |
|---|---|---|
| 1 | CV2019-015355 | Grant, Travis - DOB: N/A |
| 2 | CV2019-090493 | Grant, Travis - DOB: N/A |
| 3 | CV2020-055202 | Grant, Travis - DOB: N/A |
| 4 | CV2020-055722 | Grant, Travis - DOB: N/A |
| 5 | CV2020-093006 | Grant, Travis - DOB: N/A |
| 6 | CV2021-090059 | Grant, Travis - DOB: N/A |
| 7 | CV2021-090710 | Grant, Travis - DOB: N/A |
| 8 | CV2021-093562 | Grant, Travis - DOB: N/A |

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

In addition to repeatedly suing the Grant Family, Mr. and Mrs. Ivchenko have also brought unsuccessful litigation against other targets including the Scottsdale Police[2] and an alcohol treatment facility where Mrs. Ivchenko received care for her drinking problem.[3] Mr. Ivchenko has also threatened to sue Travis Grant's *father*, and others.

What is particularly disturbing is not merely the *number* of cases filed by Mr. and Mrs. Ivchenko, but the *manner* in which those cases have been litigated. In short, rather than seeking resolution of the merits, Mr. and Mrs. Ivchenko have done exactly the opposite—they begin by filing a new case, litigate the matter aggressively, and then they *voluntarily dismiss* the case just prior to losing on the merits. Shortly thereafter, Mr. Ivchenko will re-file a new, substantially identical case, and the process will repeat again, and again, and again, and again. This is the literal definition of a vexatious litigant.

**a. Summary of Prior Litigation**

To help the Court understand the background, it is helpful to summarize the extensive history of prior litigation between the parties.

- **CASE 1.** In May 2019, Mrs. Ivchenko (represented by her husband) sued Travis Grant and his family in *Ivchenko v. Grant*, Maricopa Superior Court Case No. CV2019–090493 ("Case 1"), seeking damages of at least $1 million. In that action, Mrs. Ivchenko sued the Grant Family for defamation, invasion of privacy, intentional infliction of emotional distress, and related claims, all arising from the publication of Mrs. Ivchenko's mugshot on one of Travis's websites. After the Grant Family retained counsel (the undersigned), the case was removed to federal court. A few days later, Mr. Ivchenko voluntarily dismissed the first suit.

- **CASE 2.** Seven months later, in December 2019, Mr. and Mrs. Ivchenko (this time as co-plaintiffs) retained counsel and filed a new lawsuit against the Grant Family in *Ivchenko v. Grant*, MCSC Case No. CV2019–015355 ("Case 2"). This second suit is the underlying action which gives rise to this matter. The claims in Case 2 were substantially identical to those in Case 1, with one exception – Mr. Ivchenko was added as a party-plaintiff, asserting claims accusing the Grant Family of defaming him by posting statements on Twitter suggesting that Mr. Ivchenko committed "fraud on the U.S. Copyright Office" by submitting a copyright registration application in which Mrs. Ivchenko claimed (falsely) to own the copyright in her own mugshot.

[2] *See Renee Ivchenko v. City of Scottsdale*, Ariz. Dist. Court Case No. 19-CV-5834.
[3] *See Renee Ivchenko v. The River Source Treatment Center*, Case No. CV2018–092390.



GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

After Case 2 was filed, unlike Case 1, Mr. and Mrs. Ivchenko refused to dismiss the action. As a result, the Grant Family appeared through undersigned counsel, filed an Answer, and immediately moved for summary judgment.

Six days later, Mr. and Mrs. Ivchenko filed an Amended Complaint which added twenty new anonymous plaintiffs identified only as John Does and Jane Does. These new parties also asserted new claims not present in the original Complaint, alleging violations of Arizona's new "Mugshot Act", A.R.S. § 44–7902. Less than three months later, Mrs. Ivchenko and her 20 new co-plaintiffs moved to voluntarily dismiss Case 2. Because this was the *second* voluntary dismissal by Mrs. Ivchenko, the District Court ordered her claims dismissed with prejudice, over her objection.

- **CASE 3.** In May 2020 (just before the dismissal of Case 2), Mr. Ivchenko filed a *third* lawsuit – *Doe v. Grant*, MCSC Case No. CV2020–093006. The claims in Case 3 were substantially identical to those in the Amended Complaint in Case 2, with two exceptions: First, Mrs. Ivchenko was no longer a party (because her claims were all dismissed with prejudice in Case 2). Second, among the 20 anonymous plaintiffs, Mr. Ivchenko added three new plaintiffs who claimed to reside in Florida (the Grant Family are all residents of Florida). This made it appear Mr. Ivchenko had fraudulently joined non-diverse parties in an effort to stop the Grants from removing the case to federal court (as they had properly done with both Case 1 and Case 2).

Because fraudulent joinder does not defeat diversity jurisdiction, the Grant Family removed Case 3 to federal court and then moved for jurisdictional discovery seeking information about the three non-diverse (Florida resident) plaintiffs. Over Mr. Ivchenko's objection, the District Court granted the Grant Family's request for jurisdictional discovery. Just one day later, Mr. Ivchenko voluntarily dismissed Case 3 rather than allowing discovery which would reveal his effort to defraud the court. But Mr. Ivchenko still do not stop.

- **CASE 4.** Shortly after voluntarily dismissing Case 3 in November 2020, Mr. Ivchenko filed Case 4 in January 2021; *Doe v. Grant*, MCSC Case No. CV2021–090059.

Unlike the prior three actions, Case 4 was not voluntarily dismissed by Mr. Ivchenko. Rather, Case 4 dismissed on the merits after Judge Westerhausen found all claims in the case were barred by federal law, specifically the Communications Decency Act, 47 U.S.C. § 230.[4] This same argument, among others, was previously raised in the summary judgment motion in Case 2 (which was never ruled upon because Mrs. Ivchenko voluntarily dismissed the case prior to a ruling)

[4] *See* minute entry order filed 4/1/2021 in CV2021–090059.



GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

- **<u>CASE 5</u>.** On February 12, 2021, prior to losing Case 4 on the merits, Mr. Ivchenko filed a <u>fifth</u> action against the Grant Family, *Doe v. Grant*, MCSC Case No. CV2021–090710. As before, the claims in Case 5 were substantially identical to those in all four prior cases, including the claims which were dismissed on the merits in Case 4.

  However, after Judge Westerhausen's dismissal of Case 4 (which occurred on April 1, 2021), rather than dismissing Case 5, on July 2, 2021 Mr. Ivchenko filed an Amended Complaint in Case 5 to purportedly assert class action claims on behalf of every person who has ever been arrested in Arizona. To date, Mr. Ivchenko has not served the Complaint in Case 5, but he has repeatedly sought (and received) extensions of time to complete service.

Against this exceptional backdrop of vexatious conduct, it should come as no surprise that after the third successive dismissal, the Grant Family finally had enough. As a result, on January 21, 2021, the Grant Family sued Mr. and Mrs. Ivchenko in the U.S. District Court in *Travis Grant, et al. v. Andrew Ivchenko*, *et al*, Case 21-CV-108. As indicated in the current operative pleading (the First Amended Complaint, attached hereto as <u>Exhibit A</u>; excluding exhibits), the Grant Family are suing Mr. and Mrs. Ivchenko for malicious prosecution and abuse of process arising from their conduct in Cases 1, 2 and 3. In addition, the Grant Family is also seeking declaratory relief, noting that the Ivchenkos have repeatedly threatened to continue suing over the publication of Mrs. Ivchenko's mugshot and related body-cam footage from her arrest, even though such claims have already been dismissed with prejudice. Accordingly, the Amended Complaint in the federal case seeks declaratory relief as follows:

> 257. Plaintiffs are entitled to a declaration finding that their publication of public records relating to Renee Ivchenko, including but not limited to, bodycam footage, police reports, and other public records, is protected speech under the First Amendment and is not unlawful under any legal theory recognized in the State of Arizona.

<u>Exhibit A</u> at 33, ¶ 257.



GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

Rather than addressing the merits, Mr. and Mrs. Ivchenko responded to the Federal Litigation with a Motion to Strike, Motion For More Definite Statement, and a Motion for Jurisdictional Discovery. Those motions were all denied, as moot, after the initial Complaint was amended. Thereafter, the Ivchenkos renewed their Motion to Strike and Motion for More Definite Statement, both of which have been fully briefed and are currently awaiting decision. Those two motions have been pending since March 31, 2021.

Regardless of whether the two pending motions are granted or denied, it is virtually certain the Federal Litigation will continue forward, and when it does, Mr. and Mrs. Ivchenko will eventually respond with a Rule 12(b)(6) Motion to Dismiss. Obviously, the Grant Family with oppose any such motion, and if the Motion to Dismiss is denied, Mr. and Mrs. Ivchenko will be required to file a responsive pleading. At that time, Rule 13(a) will require that they assert any compulsory counterclaims they may have, and if they fail to do so, those claims will be permanently barred.

**b. Summary of Current Litigation**

As evident from both the Amended Complaint filed in the Federal Litigation and the Complaint filed in this case, both actions involve substantially the same parties (the only difference being the undersigned is not a party to the Federal Litigation), and the same claims arising from the same events. In short, in the Federal Litigation, the Grant Family is suing Mr. and Mrs. Ivchenko for malicious prosecution, among other things, claiming the three prior lawsuits filed by Mr. Ivchenko were brought without probable cause, with malice, and for improper reasons.

Specifically, the Grant Family alleges that in addition to using litigation primarily as a tool for harassment, Mr. and Mrs. Ivchenko also sought to use the three prior lawsuits as a form of extortion to obtain a collateral benefit; i.e., to force Travis to give Mr. Ivchenko 2,400 “removal credits” that would allow Mr. Ivchenko to remove mugshots and other records from Travis’s websites on behalf of third parties. Assuming these removal credits could be sold for $1,000 each, the Grant Family alleges the value of Mr. Ivchenko’s extortion attempt was $2.4 million.



GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

For their part, in this new state proceeding, Mr. and Mrs. Ivchenko are primarily focused on undersigned counsel and his conduct in connection with Case 2. In short, Mr. and Mrs. Ivchenko accuse the undersigned of making false statements in the summary judgment motion filed in Case 2. Specifically, the Ivchenkos claim the undersigned "intentionally decided to make false factual allegations in the Motion for Summary Judgment to falsely make it appear that one or more of Plaintiff Renee Ivchenko's claims did not state timely claims for relief." Compl. ¶ 77.

The merits of this claim, and all other claims in the Complaint, are beyond the scope of the instant motion. However, the suggestion that the summary judgment motion contained any "false statements" has no basis in fact. Rather, this argument is based on a mischaracterization of both the Complaint in Case 2, as well as the summary judgment motion filed in response to that Complaint. After reviewing both pleadings, it will be clear the summary judgment motion contains nothing remotely improper or false, and that all of the Ivchenkos claims have no merit for other reasons.

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

## II. DISCUSSION

### a. The Claims Here Are Compulsory Counterclaims

The above discussion leads to a simple question—given that there is already pending litigation in federal court between the Grant Family and Mr. and Mrs. Ivchenko arising from the exact same events, should Mr. and Mrs. Ivchenko be allowed to proceed with a second, later-filed state court action asserting claims which would clearly be compulsory counterclaims under Rule 13? The answer to that question is NO.

This much is clear: "Rule 13(a) requires the pleader to assert any counterclaims arising from the same transaction and occurrence against an opposing party. Economy and efficiency are the overriding purposes of Rule 13(a), <u>forcing parties to bring all the claims logically related to the main claim or else be barred from ever doing so in the future</u>." *Mirchandani v. BMO Harris Bank, N.A.*, 235 Ariz. 68, 71, 326 P.3d 335, 338 (App. 2014) (emphasis added) (citing *Occidental Chem. Co. v. Connor*, 124 Ariz. 341, 344-45, 604 P.2d 605, 608-09 (1979)).

This rule, known as the "compulsory counterclaim rule" was created for exactly the situation presented here—when a vexatious litigant like Mr. Ivchenko needlessly files a *second* action arising from the same events rather than simply bringing counterclaims in the first pending action. The compulsory counterclaim rule, as set forth in Rule 13(a), prohibits this wasteful result:

> The requirement that counterclaims arising out of the same transaction or occurrence as the opposing party's claim "shall" be stated in the pleadings was designed to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters. The Rule was particularly directed against one who failed to assert a counterclaim in one action and then instituted a second action in which that counterclaim became the basis of the complaint.

*S. Constr. Co. v. United States ex rel. Pickard*, 371 U.S. 57, 60, 83 S. Ct. 108, 110 (1962) (emphasis added).

This is precisely the situation here. The claims Mr. and Mrs. Ivchenko are asserting in this state proceeding clearly arise from exactly the same events at issue in the Grant Family's claims in the earlier-filed federal case. Thus, Mr. and Mrs. Ivchenko's claims in this case are compulsory counterclaims to the claims of the Grant Family in the Federal Litigation. As a result, Rule 13(a) prohibits the Ivchenkos from commencing a new suit arising from the same events; any such claims must be asserted as counterclaims in the pending federal action.

**b. Standard For A Stay**

Although the Arizona Rules of Civil Procedure do not expressly provide for stays of litigation, it has been repeatedly recognized "trial courts have inherent authority to enter orders that facilitate the orderly and efficient execution of their jurisdiction." *Bergeron ex rel Perez v. O'Neil,* 205 Ariz. 640, 649, 74 P.3d 952, 961 (App. 2003) (citing *Owen v. City Court*, 123 Ariz. 267, 268, 599 P.2d 223, 224 (1979); *Fenton v. Howard*, 118 Ariz. 119, 121, 575 P.2d 318, 320 (1978)). Federal courts recognize the same rule. *See Landis v. North America Co*., 299 U.S. 248, 254 (1936) ("[T]he power to stay



GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); *Mediterranean Enters. Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983) (agreeing, a court "may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case.")

Applying that rule, the Arizona Court of Appeals has determined a stay of litigation should be entered by a state court when a pre-existing federal case is pending between the same parties involving the same issues. That was precisely the holding in a helpful and closely analogous case, *Tonnemacher v. Touche Ross & Co.*, 186 Ariz. 125, 920 P.2d 5 (App. 1996).

*Tonnemacher* involved substantially if not exactly the same situation present here – a federal action was filed in 1989 in the U.S. District Court in Arizona, and while that matter was pending, a related state court action was filed in 1993 in the Maricopa County Superior Court involving the same parties and similar claims arising from the same events. Initially, the defendant in the state court proceeding moved to dismiss, arguing the federal court action automatically "abated" the state court proceeding. The state court agreed, and it dismissed the state proceeding without prejudice. *See Tonnemacher*, 186 Ariz. at 127.

The Arizona Court of Appeals *reversed*, finding the pendency of an earlier-filed federal case did not *automatically* require dismissal of the state court action. Instead, the Court of Appeals explained the better course of action was to <u>stay</u> the later-filed case pending the resolution of the earlier-filed one:

> Because of the risks of injustice posed by dismissal, and because the countervailing concerns are satisfied by issuing a stay, the superior court should not dismiss an action <u>based on a prior action pending in the federal court</u> and <u>instead should issue a stay order if the circumstances warrant</u>.

*Tonnemacher*, 186 Ariz. at 130 (emphasis added).

In terms of the "circumstances" that warrant a stay, the Court of Appeals set forth a list of factors to consider which include:

1.) avoiding increased costs;

2.) preventing harassment by repeated suits involving the same subject matter;

3.) avoiding extra cost and burden to judicial resources;

4.) avoiding piecemeal litigation,

5.) avoiding unusually difficult questions of federal law that bear upon important policy issues, and

6.) avoiding conflicting judgments by state and federal courts.

*Id*. (citing *Landis v. North American Co*., 299 U.S. 248, 254, 81 L. Ed. 153, 57 S. Ct. 163 (1936); *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 47 L. Ed. 2d 483, 96 S. Ct. 1236 (1976)); *see also Apache Produce Imps., Ltd. Liab. Co. v. Malena Produce, Inc*., 247 Ariz. 160, 164, 447 P.3d 341, 345 (App. 2019) (affirming and adopting the *Tonnemacher* factors for purposes of granting a stay).

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

### c. This Action Should Be Stayed

Reviewing the six factors identified in *Tonnemacher*, it is clear every one of these factors supports a stay of this proceeding. First, there is no question that allowing two parallel lawsuits between the same parties arising from the same events would needlessly increase costs (Factor #1), would needlessly permit Mr. and Mrs. Ivchenko to continue their campaign of harassment by unnecessarily duplicative litigation (Factor #2), would result in extra costs and burden to judicial resources (Factor #3), would result in piecemeal litigation (Factor #4), and could possibly result in directly conflicting judgments from the state and federal courts (Factor #6). Those points, standing alone, are more than enough to warrant a stay of this matter.

However, a few additional comments are worth mentioning regarding Factor #5; i.e., whether a stay of this state court proceeding would help avoid "unusually difficult questions of federal law that bear upon important policy issues." The answer to that question is also yes, but for reasons that require some additional explanation.

As noted above, Mr. and Mrs. Ivchenko's claims in this case arise from and relate to events that occurred during "Case 2". That point is demonstrated by Paragraphs 49–82 of the Complaint in this matter which extensively references "Case 2" and accuses the Grant Family and the undersigned of various improper acts related to Case 2 (these specific acts are outlined in ¶ 151 of the Complaint). The Ivchenkos further allege that this misconduct qualified as "abuse of process" which was "designed to drain Plaintiffs' financial resources and also to intimidate them to drop the lawsuit, knowing that the entire action [Case 2] had merit." Compl. ¶ 148 (emphasis added).

The issue of whether "the entire action [Case 2] had merit" implicates complicated questions of federal law which this court has no subject matter jurisdiction to decide. Specifically, in Case 2, one of the central allegations was that the Grant Family defamed Mr. Ivchenko by posting statements on Twitter suggesting Mr. Ivchenko had committed "fraud" on the U.S. Copyright Office. That statement (which was *not*, in fact, posted by the Grant Family) alluded to the fact that after Mrs. Ivchenko's mugshot was created and published online by MCSO, Mr. Ivchenko submitted an application to the U.S. Copyright Office in which he made an affirmative representation that Mrs. Ivchenko was the "author" of her mugshot and thus owned the exclusive copyright in that work.

To be clear—the allegation that Mr. Ivchenko committed "fraud" on the Copyright Office appears to be entirely true. In other pleadings, Mr. Ivchenko has admitted that he did submit an application to the U.S. Copyright Office on behalf of Mrs. Ivchenko claiming copyright ownership in the mugshot created by MCSO. Because the Copyright Office does not independently investigate or verify claims of ownership, a registration certificate was subsequently issued in Mrs. Ivchenko's name. Immediately thereafter, Mr. Ivchenko sent out several DMCA (Digital Millennium Copyright Act) "takedown" notices to website operators including Twitter and Google, demanding that they remove Mrs. Ivchenko's mugshot based on her alleged status as the copyright owner.

In their malicious prosecution action against Mr. and Mrs. Ivchenko, the Grant Family alleges that Mr. Ivchenko's defamation claims in Case 2 were groundless



GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

because: A.) the Grant Family did not post any statements about Mr. Ivchenko on Twitter, and B.) even if they had, those statements were completely true. Obviously, if the statement accusing Mr. Ivchenko of "fraud" on the Copyright Office was true, then it could not support a cause of action for defamation.

In the Complaint filed in this matter, Mr. Ivchenko continues to argue that every claim in Case 2 had merit, including his defamation claim based on the "copyright fraud" issue. The Grant Family (in their federal malicious prosecution action) take exactly the opposite position; they allege Mr. Ivchenko did commit fraud on the Copyright Office because he applied for a certificate of registration that he knew contained materially false statements of fact (i.e., that Mrs. Ivchenko was the "author" of her own mugshot).

The resolution of this disputed point involves complicated questions of federal law arising under the U.S. Copyright Act, 17 U.S.C. § 101, *et seq*. Specifically, the question of whether Renee Ivchenko owned the copyright in her mugshot requires an analysis of 17 U.S.C. § 201 (setting forth the standards for determining copyright ownership). Because that question arises under the U.S. Copyright Act, a state court lacks subject matter jurisdiction to resolve it; "No State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents, plant variety protection, or copyrights." 28 U.S.C. § 1338(a) (emphasis added).

The question of whether "all claims" in Case 2 had merit (as Mr. Ivchenko now argues) is a critical issue in determining the existence of probable cause, which, in turn, is a necessary element of malicious prosecution. Similarly, Mr. Ivchenko's abuse of process claim also depends on his allegation that "the *entire* action had merit." Compl. ¶ 148.

For that reason, although the *Tonnemacher* Court did not suggest that a stay should be granted only when *all six* factors weigh in favor of that result, here all six factors strongly support a stay of this state court proceeding. This is true because, as explained above, determining whether or not Case 2 had merit will require the application and analysis of complicated questions of federal law which this court lacks jurisdiction to determine. Thus, the Fifth *Tonnemacher* factor also favors a stay.



GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

Finally, it is worth noting that an order staying this proceeding will have absolutely no adverse effect on the Ivchenkos' right to pursue their claims. Obviously, Mr. Ivchenko will argue (as he does in virtually every pleading) that the malicious prosecution action against him is groundless, and that he expects the case to be dismissed on the pleadings. If he is correct, then as soon as the federal litigation is dismissed, he may ask this Court to lift the stay and allow this action to proceed.

On the other hand, if Mr. Ivchenko is wrong, and if the federal litigation proceeds forward, there is simply nothing unfair about requiring Mr. Ivchenko to bring his claims as compulsory counterclaims in the federal case. Again, the federal litigation was filed more than six months before this case, and several key aspects of Case 2 require application of federal laws including the Copyright Act and a separate part of the Digital Millennium Copyright Act, 17 U.S.C. § 512. Those are uniquely federal issues that a federal court is well-equipped to address. Accordingly, this dispute should be allowed to proceed to its conclusion in federal court.

## III. CONCLUSION

For the reasons stated above and pursuant to the rule set forth in *Tonnemacher v. Touche Ross & Co.*, 186 Ariz. 125, 920 P.2d 5 (App. 1996), this Court should order these proceedings stayed pending the outcome of the Federal Litigation described above.

DATED: August 20, 2021.

**GINGRAS LAW OFFICE, PLLC**

David S. Gingras, Esq.

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

**Original** e-filed through www.azturbocourt.com
and **COPIES** delivered on August 20, 2021 to:

Andrew Ivchenko, Esq.
LAW OFFICES OF ANDREW IVCHENKO
4960 S. Gilbert Road, #1-226
Chandler, AZ 85249

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

# Exhibit B

Clerk of the Superior Court
*** Electronically Filed ***
10/06/2021 8:00 AM

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2021-093562 10/04/2021

HONORABLE PETER A. THOMPSON

CLERK OF THE COURT
V. Felix
Deputy

ANDREW IVCHENKO, et al. ANDREW IVCHENKO

v.

DAVID S GINGRAS, et al. DAVID S GINGRAS

TRAVIS PAUL GRANT
949 MOSS TREE PL
LONGWOOD FL 32750
MARIEL LIZETTE GRANT
949 MOSS TREE PL
LONGWOOD FL 32750
KYLE DAVID GRANT
2940 LOBELIA DR
LAKE MARY FL 32746
JUDGE THOMPSON

**MINUTE ENTRY**

The Court has received and fully considered Defendant's Motion For Stay, Plaintiffs' Response To Defendant's Motion To Stay and Defendant's Reply In Support of Motion For Stay. After considerable deliberation and for the reasons set forth in Defendant's Motion,

**IT IS ORDERED** granting Defendant's Motion to Stay litigation in CV2021-093562 pending final adjudication of all claims in U.S. District Court For The District of Arizona under the cause of action styled *Travis Grant, et al. v. Andrew Ivchenko, et al.*, Case No. 21-CV-108 filed January 21, 2021.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2021-093562 10/04/2021

**IT IS FURTHER ORDERED** placing this case on the Inactive Calendar for Dismissal on **October 31, 2022** unless a status report is filed with the Court indicating the case pending in the U.S. District Court For The District of Arizona under the cause of action styled *Travis Grant, et al. v. Andrew Ivchenko, et al.,* Case No. 21-CV-108 filed January 21, 2021 is still not concluded. In the event the U.S. District Court litigation remains in process either party may request a continuance on the Inactive Calendar.

# Exhibit C

GINGRAS LAW OFFICE, PLLC

4802 E. Ray Road #23-271, Phoenix, AZ 85044 ▪ Tel: (480) 264-1400 ▪ Fax: (480) 248-3196

May 7, 2020

VIA EMAIL: lawyerinfo@staff.azbar.org
& U.S. Mail

State Bar of Arizona
4201 North 24th Street, Suite 100
Phoenix, AZ 85016-6266

Re: Mandatory Report of Attorney Misconduct

To Whom It May Concern:

I am an attorney in Phoenix, Arizona and I am a member of the State Bar of Arizona. I am submitting this report to you pursuant to the requirements of Rule ER 8.3. As explained below, I have become aware of information about another attorney which raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects. I therefore feel I have an obligation to report this conduct to the bar.

The attorney in question is Andrew Ivchenko, AZ Bar #021145.

As explained further below, I am aware of information which appears to show that Mr. Ivchenko has committed several serious federal crimes including perjury and making knowingly false statements to the United States Copyright Office in violation of 17 U.S.C. § 506(e). The context of this conduct is both sad and simple—in April 2018, Mr. Ivchenko's wife, Renee Rachelle Ivchenko, was arrested for drunkenly assaulting a police officer in Scottsdale.

At the time of her arrest, Mrs. Ivchenko was transported to the Maricopa County Sheriff's Office where she was booked. In keeping with its normal practice, the MCSO took a booking photo or "mugshot" of Mrs. Ivchenko, which it subsequently published on its website at https://www.mcso.org/Mugshot/.

I represent a client named Travis Grant who owns and operates several websites which index and display criminal records. At the present time, Mr. Grant's websites contain more than 20 million arrest records and mugshots.

Shortly after Mrs. Ivchenko's arrest, her mugshot and information about her criminal charges appeared on one of Mr. Grant's websites, RapSheets.org. A partial screenshot of the page in question is shown below. As you can see, this page includes Mrs. Ivchenko's mugshot. Lower down on the page was information about the date of her arrest and the crimes she was charged with.




In addition to appearing on my client's website, Mrs. Ivchenko's mugshot was also republished on several other websites. It was also republished at least twice on Twitter by one or more unknown individuals. My client had nothing to do with the photo being posted on Twitter.

One example of the image appearing on Twitter is shown below. As you may be able to see from the screenshot, the image originally appeared at this address: https://twitter.com/publicdata2/status/1207890262338371584 which is a Twitter account with a "handle" or screen name of @PublicData2 (the address of the page is important, for reasons I will explain in a moment). Apparently whoever runs this account chose to publish Mrs. Ivchenko's photo after learning that she was suing the City of Scottsdale for false arrest (even though she admitted guilt as part of a felony diversion agreement).




At some point in time, Mr. Ivchenko became aware that his wife's mugshot was posted online. Since learning about this, Mr. Ivchenko has gone to extreme (and illegal) lengths in an attempt to hide the mugshot from public view. As part of that process, it appears that Mr. Ivchenko submitted an application to the United States Copyright Office which claimed—falsely—that Mrs. Ivchenko was the "author" and owner of the copyright in her mugshot.

Below is a screenshot obtained from the U.S. Copyright Office website which shows that on March 23, 2019 (almost a year after her arrest), Mrs. Ivchenko (presumably with the assistance of Mr. Ivchenko) submitted a registration application for an "untitled" work. Although the U.S. Copyright Office website does not display the actual "work" which has been registered, my belief is that the "work" that was submitted in connection with this registration was Mrs. Ivchenko's mugshot. If that assumption is correct, then Mr. and/or Mrs. Ivchenko committed a federal crime by making a knowingly false statement in a copyright application. *See* 17 U.S.C. 506(e).




After this copyright registration was issued, Mr. Ivchenko used it to send legal "takedown" demands to websites including Twitter in which he claimed—falsely—that the publication of Mrs. Ivchenko's mugshot constituted copyright infringement. These types of copyright-based takedown demands (also known as a "DMCA Notice" in reference to the Digital Millennium Copyright Act, 17 U.S.C § 512), are cataloged by Harvard University which publishes them in a searchable database located at www.lumendatabase.org.

Below is a screenshot reflecting the most recent DMCA notice sent by Mr. Ivchenko. As this notice reflects, Mr. Ivchenko demanded that Twitter take down the image located at: https://twitter.com/publicdata2/status/1207890262338371584.

This is the same page mentioned above; i.e., the one containing Mrs. Ivchenko's mugshot.



DMCA Takedown Notice (Tweet)

lumendatabase.org/notices/20711578

You are already signed in.

Lumen

Search Topics About Research

Search all notices... Go

**Advanced Search:** add additional search queries

All words required Add more

Advanced Search

**DMCA Takedown Notice (Tweet)**

**SENDER**
**Andrew Ivchenko PLLC**
[Private]
Sent on April 03, 2020

**RECIPIENT**
**Twitter**
[Private]
San Francisco, CA, 94103, US

**SUBMITTER**
**Twitter, Inc.**

**Re: Unknown**
SENT VIA: WEB FORM

NOTICE TYPE: DMCA
ACTION TAKEN: Yes

**Copyright claim #1**

KIND OF WORK: Tweet
DESCRIPTION
ORIGINAL URLS: No copyrighted URLs were submitted.
ALLEGEDLY INFRINGING URLS: 01. https://twitter.com/publicdata2/status/1207890262338371584
02. https://t.co/5ghUZGHaxi

JURISDICTIONS Unspecified

TOPICS
Copyright

TAGS

© 2017 Lumen Legal Licenses Privacy Researchers Sign Out

NOTE – by law, any person who sends a DMCA notice must attest that the information in the takedown notice is accurate, under penalty of perjury. *See* 17 U.S.C. § 512(c)(3)(A)(vi). Furthermore, the Copyright Act expressly prohibits making any false statements in a DMCA notice. *See* 17 U.S.C. § 512(f).

Unfortunately, despite its size, Twitter does not have sufficient resources to "fact-check" or challenge every takedown demand it receives. As a result, Twitter complied with Mr. Ivchenko's demand and removed Mrs. Ivchenko's mugshot, even though there was no valid legal or factual basis for its removal.



Putting aside the fact that Twitter should not have complied with this groundless demand, when Mr. Ivchenko submitted this DMCA notice to Twitter on April 3, 2020, he committed perjury by representing that his wife owns the copyright in her mugshot. As a matter of law, copyrights are owned by the "author" of the work which, in the case of a photograph, means the person or entity who created the photo, *e.g.*, MCSO. There is absolutely no valid legal basis upon which Mrs. Ivchenko could claim to own a copyright in her own mugshot.

Despite this, Mr. Ivchenko has sent DMCA takedown notices to Twitter and/or Google on at least three other occasions – July 20, 2019, December 24, 2018, and October 12, 2019. Because Mrs. Ivchenko has no copyright ownership in her mugshot, Mr. Ivchenko committed perjury when sending each of these notices.

To be clear—I have some degree of sympathy for Mr. Ivchenko and his desire to protect his wife from embarrassment. That much is understandable. However, this does not justify Mr. Ivchenko's actions, nor does it entitle him to knowingly make false statements simply to benefit his wife.

As a member of the State Bar of Arizona, Mr. Ivchenko is not entitled to engage in criminal conduct involving such blatant acts of dishonesty. As a lawyer, Mr. Ivchenko is required to not only refrain from engaging in criminal conduct, he is also required to comply with the Rules of Professional Conduct which do not permit lawyers to make false statements simply because it will help a loved one.

Also, entirely separate and apart from the false DMCA notices and fraudulent copyright registration, Mr. Ivchenko has engaged in other misconduct which I believe raises serious questions regarding his fitness to practice law. Specifically, Mr. Ivchenko has filed *numerous* groundless and frivolous lawsuits in an attempt to suppress his wife's mugshot from public view. These lawsuits included claims which Mr. Ivchenko knew were untimely as a matter of law and/or groundless for other reasons.

Specifically, on May 9, 2019, Mr. Ivchenko filed a Complaint in the Maricopa County Superior Court, Case No. CV2019-090493. A copy of the Complaint is attached hereto as Exhibit A.

In this Complaint, Mr. Ivchenko asserted claims against my clients for, among other things, defamation. In short, Mr. Ivchenko claimed that my clients defamed Mrs. Ivchenko by publishing her mugshot, thereby "implying" that she was guilty of committing a crime. I believe it is clear that Mr. Ivchenko violated Rule ER 3.1 in bringing this claim because he knew, or reasonably should have know, that the claim was groundless for multiple reasons.

First, the claim was untimely as a matter of law. This is so because Mrs. Ivchenko was arrested in April 2018, and her mugshot was automatically indexed and republished on my clients' website within days of her arrest. Pursuant to A.R.S. § 12–541, defamation claims are subject to a one-year limitation period which begins to run on the date the allegedly defamatory information is first published, not when the information is first discovered. *See Larue v. Brown*, 235 Ariz. 440, 443 (App. 2014) ("Arizona provides that the statute of limitations for a defamation action begins to run upon publication of the defamatory statement. [citations] A plaintiff has one year after a defamation action accrues to commence and prosecute his claim.") Accordingly, when Mr. Ivchenko filed suit on May 9, 2019, he knew or should have known the defamation claim was untimely as a matter of law.

Separate and apart from that point, Mr. Ivchenko also violated ER 3.1 because defamation claims cannot be based on statements that are true. Here, in order to resolve the felony assault charges against her, Mrs. Ivchenko entered into a felony pretrial diversion agreement, a copy of which is attached hereto as Exhibit B. As this document reflects, Mrs. Ivchenko signed a statement which expressly admitted that she was GUILTY of the offense she was charged with (felony assault on a police officer).

> As part of my consent to participate in the Felony Pretrial Intervention Program, I acknowledge that I am guilty of the offenses charged in the complaint. I acknowledge that this admission and the statements in this document may be used against me if I fail to successfully complete the program and my case proceeds to trial. I understand that I have the right to remain silent and I make the following statements voluntarily after consultation with my attorney.
>
> On **April 21, 2018** in **Scottsdale, Arizona - Maricopa County**
> Date of Offense — Location and Jurisdiction
>
> **On April 21, 2018, I, Renee Ivchenko, knowingly touched Brandon Treglown in the chest area with the intent to provoke him. Brandon Treglown is a a Scottsdale Police Officer and at the time of this incident he was in full uniform and I knew he was a police officer acting in his official capacity.**

Clearly, Mr. Ivchenko (who was present at the time of his wife's arrest) knew that she had committed the crime she was charged with, and he knew or should have known his wife entered into an agreement which required her to admit guilt. Knowing those facts, Mr. Ivchenko had no grounds whatsoever to sue my clients for defamation on the basis that they *falsely* implied Mrs. Ivchenko had committed a crime.

As explained above, I do not believe there is any question that Mr. Ivchenko has engaged in conduct which is criminal, unethical, and which raises serious questions regarding his fitness to practice law. Moreover, Mr. Ivchenko's actions have caused serious harm to my clients by forcing them to needlessly incur thousands of dollars in attorney's fees and costs. For these reasons, I respectfully request that the State Bar investigate this matter fully, and take whatever actions you deem appropriate to protect the public and the courts from further harm.

I am happy to provide any further information you may require. If you have any questions, please feel free to reach me at (480) 264-1400 or via email at: david@gingraslaw.com or via fax at: (480) 248-3196.

Very Truly Yours,

David S. Gingras, Esq.

cc: Client (via email only)

# Exhibit D

STATE BAR OF ARIZONA

Assistant's Direct Line: 602-340-7244

May 28, 2020

Due to current circumstances, the attached letter is being sent by email only. If you have any questions, please email the assigned Intake Bar Counsel at: Blair.Moses@staff.azbar.org.

David S. Gingras
Gingras Law Office, PLLC
david@gingraslaw.com

**Re: File No:** 20-1100
**Respondent:** Andrew Ivchenko

Dear Mr. Gingras:

I reviewed your submission regarding Mr. Ivchenko and discussed with you some of the questions I had regarding your submission. After my review, I have determined further investigation is not warranted at this time, and our file has been closed.

The issues you raise, such as allegations of frivolous claims and lawsuits, perjury, false and misrepresented copyright claims, and inappropriate action and misrepresentation under the Digital Millennium Copyright Act, are legal issues that require a determination by a court of law. As you are involved in current, ongoing civil litigation, the court is the appropriate venue at this point to address issues related to your case, as the court is the most familiar with the facts, rules, statutes, and case law for your case. Concerns such as yours should, therefore, be addressed to the judge presiding over your proceedings. It is inappropriate for the State Bar to get involved in active cases, except under certain circumstances not applicable here. Further, your allegations that federal crimes were committed should be addressed to the appropriate law enforcement agency. The State Bar has no authority to investigate criminal activity.

If the court concludes Mr. Ivchenko acted inappropriately, please provide us with a copy of that written court decision for further consideration. Until then, this matter will remain dismissed. Pursuant to Arizona Supreme Court Rule 71, the State Bar file may be expunged in three years.

Sincerely,

/s/ Blair H. Moses

Blair Hartwell Moses
Bar Counsel – Intake

BHM/tab

# Exhibit E

Attorney Discipline
Probable Cause Committee
of The Supreme Court of Arizona
FILED

MAY 18 2022

**BEFORE THE ATTORNEY DISCIPLINE**
**PROBABLE CAUSE COMMITTEE**
**OF THE SUPREME COURT OF ARIZONA**

| | |
|---|---|
| **IN THE MATTER OF A MEMBER OF THE STATE BAR OF ARIZONA,**<br><br>**DAVID S. GINGRAS**<br>**Bar No. 021097**<br><br>**Respondent.** | **No.** 21-2455<br><br>**ORDER** |

On March 11, 2022 the Attorney Discipline Probable Cause Committee issued its order finding probable cause and admonishing Respondent for violating Rule 42, ER 4.2, 4.4, and 8.4(a) with designated terms and assessing costs. Service of that order occurred on March 23, 2022.

The Committee's orders are final unless within 10 days of service of the subject order a Respondent files a written demand for formal proceedings pursuant to Rule 55(c)(4) (A) and (B). Respondent's demand for formal proceedings, filed on April 04, 2022, is timely. Accordingly, the Committee's order of admonition and costs is vacated, and the State Bar is directed to prepare and file a formal complaint.

**DATED** this 18 day of May, 2022

Judge (ret.) Lawrence F. Winthrop, Chair
Attorney Discipline Probable Cause
Committee of the Supreme Court of Arizona

Original filed this 18 day
Of May, 2022 to:

Attorney Discipline Probable Cause Committee
Supreme Court of Arizona
1501 West Washington Street, Suite 104
Phoenix, Arizona 85007

Copy emailed this 18 day
of May, 2022, to:

David S. Gingras
Gingras Law Office, PLLC
4802 E Ray Rd Ste 23-271
Phoenix, AZ 85044-6417
Email: david@gingraslaw.com
Respondent

Copy emailed/mailed this 18 day
of May, 2022, to:

Lawyer Regulation Records Manager State Bar
of Arizona
4201 N. 24th St., Suite 100
Phoenix, Arizona 85016-6266

Compliance Monitor
State Bar of Arizona
4201 N. 24th St., Suite 100
Phoenix, AZ 85016

by: [signature]

# Exhibit F

**BEFORE THE PRESIDING DISCIPLINARY JUDGE**

| | |
|---|---|
| **IN THE MATTER OF A MEMBER OF THE STATE BAR OF ARIZONA,**<br><br>**DAVID S. GINGRAS,**<br>**Bar No. 021097**<br><br>**Respondent** | **PDJ 2022-9037**<br><br>**ORDER VACATING HEARINGS AND GRANTING STATE BAR'S MOTION TO DISMISS AND SUPPLEMENTAL REQUEST FOR A PROTECTIVE ORDER SEALING A PORTION OF THE STATE BAR FILE**<br><br>[State Bar No. 21-2455]<br><br>**FILED SEPTEMBER 21, 2022** |

On September 19, 2022, the State Bar filed a Motion to Dismiss and Supplemental Request for a Protective Order Sealing a Portion of the State Bar File. Respondent David S. Gingras responded that he has no objection to the State Bar's motion. Good cause appearing,

**IT IS ORDERED** that the complaint filed against Respondent on June 2, 2022 is dismissed without prejudice, each party to bear its own costs and fees.

**IT IS FURTHER ORDERED** sealing the fee agreements Attorney Ivchenko provided to the State Bar in this matter, as well as the names of his clients, from both Respondent and the public.

**IT IS FURTHER ORDERED** vacating the final hearing management conference set for October 17, 2022 and the evidentiary hearing set for October 26 and 27, 2022.

**IT IS FURTHER ORDERED** denying all other pending motions as moot.

**DATED** this 21st day of September, 2022.

*Margaret H. Downie*
**Margaret H. Downie**
**Presiding Disciplinary Judge**

COPY of the foregoing e-mailed
this 21st day of September, 2022, to:

Marc. J. Randazza
Randazza Legal Group, PLLC
2764 Lake Sahara Dr., Suite 109
Las Vegas, NV 89117
Email: mjr@randazza.com and ecf@randazza.com

David S. Gingras
Gingras Law Office, PLLC
4802 E. Ray Road, #23-271
Phoenix, AZ 85044
Email: david@gingraslaw.com

James D. Lee
4201 N. 24th Street, Suite 100
Phoenix, AZ 85016-6266
Email: LRO@staff.azbar.org

by: SHunt